GLENN *vs.* SMITH, Adm'r D. B. N. C. T. A. of HASLETT.—
*December,* 1830.

G, as administrator of A, took possession of various articles of personal property left by her, part of which she held as executrix of H, and sold them. Some years after this, letters of administration *d. b. n.* upon H's estate were granted to S, who brought *trover* against G, for that part of the property which had originally belonged to H. HELD, that although S was present at such sale and purchased some of the articles, yet he was not precluded thereby from recovering from G for this conversion.

Letters testamentary or of administration granted in another State, give no authority to sue, or to administer assets in this State; and will not exempt a party from liability, in an action by the rightful administrator here, though distribution be made in conformity to such letters.

H died indebted to I, leaving A his executrix, who came into the possession of assets, and paid I the notes mentioned in the following receipt, written at the foot of his account: "Received of A, executrix of H, two promissory notes signed by herself, and endorsed by G & Co. in payment of the above account." Before these notes arrived at maturity, A died, and G, her executor, took possession of her estate and sold it, and paid the notes in question. Letters *d. b. n.* upon the estate of H were granted to S, who sued G in *trover* for the value of property which belonged to H, but which G had sold as executor of A. HELD, that the acceptance by I of the notes in question, was not an extinguishment of the debt due him by H; that the payment by G, was, therefore, the payment of H's debt, and entitled him to deduct that payment from the proceeds of H's personal property sold by him.

The acceptance by a creditor from his debtor of his promissory note, for an antecedent simple contract debt, does not extinguish the original debt, if it remains in the hands of the creditor unpaid, and he can produce it to be cancelled, or show it to be lost. But the creditor will not be suffered to recover on the original cause of action, unless he can show the note to have been lost, or produces it at the trial, to be cancelled.

The acceptance by a creditor, of a note or bill of a third person, for a pre-existing debt, is no payment or extinguishment of such debt, unless the creditor parts with it, or is guilty of laches in not presenting it for payment in due time.

In either of the above cases, an express agreement by the creditor to receive the note or bill absolutely as payment, and to run the risk of its being paid, is an extinguishment of the previous debt, whether the note or bill be afterwards paid or not. Such agreements are not to be implied from the use of the words, "in payment of the above account," in a receipt for the note.

To give to the acceptance of a note the effect of an absolute payment, or extinguishment of a debt, a contract that it should be so, must be shewn.

The acceptance of a note by a creditor for a precedent debt, is a suspension of his right of action until the note reaches maturity.

There are acts of intermeddling, such as locking up the goods of a deceased person for safe keeping, which will not charge a man as executor of his own wrong.

The taking the goods of an intestate by a stranger, and using or selling them, and in general any intermeddling with them, will, as respects creditors, make him an executor de son tort, and chargeable with the debts of the deceased, so far as assets come to his hands.

As against creditors an executor de son tort is justified in paying the debts of the deceased ; and if sued by such he may plead plene administravit, and will be allowed all payments made of just debts, to any other creditors in equal or a superior degree, or in the due course of administration; though he cannot in any case, retain any part of the goods of the deceased in satisfaction of his own debt.

In trover by a rightful executor against a wrongful one, for the goods of the deceased, the defendant cannot plead payment of debts to the value, or that he has given the goods in satisfaction of the debt; but under the general issue, he may give in evidence such payments, and they will be recouped in damages, if they be such as the plaintiff would have been bound to make, as when the debts are just, and there is no deficiency of assets.

APPEAL from *Baltimore* County Court.

This was an action of *Trover*, instituted on the 15th February, 1826, by the appellees, *James Smith*, as administrator *de bonis non cum testamento annexo*, of *William W. Haslett*, against the appellant, *Elias Glenn*. The case has already been before this Court, and will be found in 7 *Harr. and Johns.* 17.

The defendant pleaded not guilty, and *actio non*, &c. to which there were issues.

1. At the trial, the plaintiff having given evidence that the articles stated in the plaintiff's nar, were the property of plaintiff's testator, and were converted by defendant to his use, the defendant then proved that Doctor *William W. Haslett*, the plaintiff's testator, was, at the time of his death, indebted to a certain *John Heslip*, in the sum of $1261 40, as is stated and appears by the account herewith exhibited.

"1814. Dr. *William W. Haslett*, dec'd. To *John Heslip*.

| | | |
|---|---|---|
| May 4. To balance due on land, | - - | $337 50 |
| To amount of stock, to wit, horses, cows, sheep, hogs and farming utensils, purchased, | - - - - - | 852 50 |
| To interest on one half, per agreement for six months, | - - - - - | 17 85 |
| To interest on the other half of the above, per agreement for 18 months, | - | 53 55 |
| | | $1261 40 |

"May 4th, 1814. Received of Mrs. *Ann Haslett*, executrix of *William W. Haslett*, two promissory notes signed by herself, and endorsed by *John W. Glenn & Co.* in payment of the above account. *John Heslip*."

And then proved, the signature of *John Heslip* to said receipt. He also gave in evidence, the two promissory notes mentioned in the said receipt though the payment in fact. And proved, that said notes were paid by the defendant as executor of *Ann Haslett*, and that the defendant was, when said notes were given, and afterwards, one of the said firm of *J. W. Glenn & Co.* and then offered to contend before the jury, that for the amount of said payment he was entitled to be allowed out of the value of the property in dispute in this cause, but which the Court, [Hanson and Kell, A. J.] refused to permit, and said, that *John Heslip* having accepted the notes of *Ann Heslip* in payment of his claim against *William Haslett*, (and passed his receipt for the same,) which notes and receipts on the bill are referred

to and inserted above, extinguished his, the said *Heslip*'s claim against the estate of *William Haslett*, and he became the creditor of said *Ann Haslett* for the amount of said notes, and that the defendant, *Elias Glenn*, having paid the said notes, as executor of *Ann Haslett*, he, although an endorser thereon, as one of the firm of *John W. Glenn & Co.* is not entitled to be allowed the same as a payment made by him for the estate of *William Haslett*, as executor *de son tort* of said *William*. The defendant excepted.

2. The defendant in addition to the testimony stated in the preceding bill of exceptions, offered in evidence to the jury, by *Matthew Murray*, a competent witness, that part of the property claimed by the plaintiff in this suit, was exposed to sale at auction by the defendant, sometime in November, 1814; and further proved by said witness, who was auctioneer at said sale, that *James Smith*, the present plaintiff, was at said sale, and was a purchaser, to the best of said witness's recollection, but of what articles witness could not recollect.

The plaintiff then, offered in evidence to the jury, the letters of administration *de bonis non* on the estate of *William Haslett*, granted him by the Orphans' Court of *Baltimore* County, and which are dated July 21st, 1821. And further proved, that at the said sale at auction mentioned by the aforesaid witness, *Matthew Murray*, the defendant sold, together with the said part of the goods claimed by the plaintiff in this suit, a considerable quantity of other goods, and that defendant sold the whole of said goods at said sale, as executor of *Anne Haslett*, the widow of plaintiff's testator. And the said *Matthew Murray*, being cross examined by the plaintiff's counsel, stated, that he had no knowledge of a purchase by the plaintiff, of any of the goods now claimed by him, or for which he seeks to recover in this suit, but that, to the best of witness's recollection, the plaintiff was a purchaser at the sale aforesaid, but whether the things so purchased were a part of the said property in dispute in this action, the witness does not know, except as

Glenn *vs.* Smith.

before stated. Whereupon the defendant prayed the opinion of the Court to the jury, that inasmuch as the plaintiff was a purchaser, at the sale of property made as aforesaid, by defendant, as executor of *Ann Haslett*, of a part of the said property belonging to the estate of *Doctor Haslett*, and which is in controversy in this suit, it is not competent to him now to deny in this action the legality of said sale, and that he is not entitled to recover more than he would have been entitled to recover, if said sale had been in every way legal and proper, which opinion and instruction the Court refused to give. The defendant excepted.

3. In addition to the testimony stated in the two preceding bills of exceptions, the defendant further offered in evidence, that letters of administration *c. t. a.* on the estate of the said *William Haslett*, were duly granted him in the State of *Delaware*, on the 14th of February, 1815, and proved that the property of the said *Doctor Haslett* in controversy in this suit, was, after the issuing of the said *Delaware* letters of administration, and after, the defendant had also obtained letters testamentary upon the estate of *Ann Haslett*, and before the plaintiff obtained his letters of *adm. de bonis non*, upon the estate of said *Doctor Haslett*, out of the Orphans Court of *Baltimore* county, taken possession of, and sold by defendant, as ex'r of said *Ann,* at the sale at public auction mentioned in the preceding exceptions. Whereupon the defendant prayed the opinion of the Court to the jury, that upon the whole evidence aforesaid, if they believe it, the said possession and sale, so as aforesaid taken and made, by said defendant, of said property of *Doctor Haslett*, was so far legal and valid as not to render the said defendant liable in this action to the plaintiff. Which opinion, the Court refused to give, the defendant excepted; and the verdict and judgment being against him, he prosecuted the present appeal.

Vol. II.—63

The cause came on to be argued before BUCHANAN, Ch. J., EARLE, and MARTIN, J.

*Taney*, (Attorney Gen'l) and *Johnson*, for the appellant, contended:

That assuming from the evidence, that the appellant was executor *de son tort*, he is entitled to *recoupe* in damages, the amount paid by him, as stated in the 1st exception.

The debt paid by the appellant did not cease to be the debt of *William Haslett*, when *Ann*, his executrix, gave her notes for the amount, it still continued a claim against his estate, which was not discharged from it, until the money was paid by *Glenn*.

*Ann Haslett* had no authority over the property in controversy, except as executrix of *William Haslett*, and upon her death, the right passed to the *administrator de bonis non* of *William*. The appellant, as the administrator of *Ann*, had no title to interfere with it, and consequently, by taking possession and selling, he became executor *de son tort*, and as such, had a right to set off payments made by him, on account of *William's* estate. *Tobey vs. Barber*, 5 *Johns. Rep.* 68. *Johnson vs. Weed*, 9 *Ib.* 310. *Kearslake vs. Morgan*, 5 *Term. Rep.* 513. *Puckford vs. Maxwell*, 6 *Ib.* 52. *Toller's Ex'rs*, 365. *Ib.* 363. *Bishop vs. Rowe*, 3 *Maul. and Selw.* 362. *Burdick vs. Green*, 15 *Johns. Rep.* 247. *Gallagher vs. Roberts*, 2 *Wash. C. C. Rep.* 191. *Ins. Co. vs. Smith*, 6 *Harr. and Johns.* 166. *Bower's Adm'r vs. The State*, 7 *Ib.* 32. *Clopper vs. Union Bank*, 7 *Ib.* 92.

The *second* exception they abandoned.

On the *third* exception, they insisted, that the letters granted the appellant in *Delaware*, are sufficient to protect him, in an action sounding in damages. When the appellant took possession of, and sold the property, in virtue of his *Delaware* letters, administration had not been granted appellee in this State, the former therefore cannot be punished as a trespasser, for an act done under such circumstances.

The decisions have gone no further than to make administration in the State necessary, in order *to sue* in a representative character. There is no evidence of the place of *Haslett's* death, except what is furnished by the letters themselves.

*Samuel I. Donaldson* and *Belt*, for the appellee, submitted on notes. Upon the *first* exception they contended, the appellant was not sued as executor *de son tort*, but in his individual capacity, he had not taken possession of the property as belonging to *Dr. Haslett's* estate, or for the purpose of administering the estate of *Haslett*, and he does not now claim the property under any trust connected with *Dr. Haslett's* estate, but as executor of *Mrs. Haslett*. He claims the property in opposition to any right of first testator, (*Dr. H.*) or those claiming under him. How then can he claim to *recoupe* in damages? This view of the subject has been recognized and sanctioned by *Fishwick vs. Sewell*, 4 *Harr. and Johns.* 429; where it is declared that defendant could not *recoupe* in damages, because he claimed negroes *in his own right, and in opposition and disclaimer of the trust* under which they were confided to him.

If the appellant is to be considered as "executor *de son tort*," he can only retain for debts paid in the *usual course of administration*. Was the payment of a debt due from *Mrs. Haslett*, a debt paid in the usual course of administration of *Dr. Haslett's* estate? Certainly not. The debt due from *Dr. Haslett* to *Heslip* had been paid by his executrix, *and she was allowed for it in her accounts with the Orphans Court*, as appears by the record. But if it be a debt against *Dr. Haslett's* estate, to enable the appellant to have any benefit from it in this action, he must shew the solvency of *Dr. Haslett's* estate. If he claims to *recoupe* in damages, it must be on the ground that he was acting as the executor of *Dr. Haslett*. He must of course shew that it was properly, regularly and legally paid, *and without injustice*

*to other creditors.* The law obliges executors and adminis-
trators to a distribution of assets. Judgments would be
preferred to such a debt as this is represented to be, and
after judgments, the personal estate is answerable to all
creditors alike. *De Sobrey vs. De Laistre, 2 Harr. and
Johns.* 224. *In Mountford vs. Gibson,* 4 *East.* 445,
*Ld. Ellenborough* says, "that when it is laid down gene-
rally, that payments made in the due course of administra-
tion by one who is executor *de son tort* are good, that must
be understood of cases where·such payments were made by
one 'who is proved to have been acting *at the time,* in the
character of executor; apply this principle to this case.
Here the *payment made to Heslip,* was made by the *execu-
tor of Dr. Haslett, who was rightfully and properly in the
possession of the testator's estate.* Her notes endorsed by
defendant and his brother, as co-partners, were accepted
by *Heslip,* and she, as before stated, was allowed for pay-
ment, as executrix. Defendant was not *then* in possession
of *Dr. Haslett's* estate, he had nothing at that time to do
with it. It was not until *Mrs. Haslett's* death, that he
intermeddled with it, and when he paid the notes given by
*Mrs. Haslett,* he did not pay them as claiming against *Dr.
Haslett's* estate, for they were not so presented to him,
*but he paid them as claims against Mrs. Haslett, whose
executor he was.* He was not, therefore, acting as adminis-
trator of *Dr. H.,* but as executor of *Mrs. H.* He did not
take the goods to administer as the property of *Dr. H.,* but
as belonging to *Mrs. H.* He did not apply them to the
payment of a debt due from him, but to a debt due from
her. How then can this be a payment· *in the usual
course of administration of Dr. Haslett's estate?* In 1
*Ventris,* 349, it was held that the payment of a debt by an
executor *de son tort,* "was no discharge against an admin-
istrator, for men must not be encouraged to meddle with a
personal estate without right." More especially can it not
be done in this case, "as the same can be adjusted on final
settlement of the estate," "if the parties should elect to go

into such adjustment." *Fishwick vs. Sewell,* 4 *Harr. and Johns.* 429.

Again, an executor *de son tort* cannot retain for debt of his own. Here he was personally responsible on the notes given by *Mrs. Haslett,* and he paid the money as her executor, and also to save his individual responsibility, which is equivalent to retaining for debt of his own. *Toller,* 365. *Heslip* did not present his claim to appellant, as executor of *Dr. Haslett,* nor did appellant pay it as such. If there was any claim against *Dr. Haslett's* estate, by appellant, it was after the payment by him of a debt for which he was personally liable, and if *Dr. H's* estate was to be liable at all, it must be to appellant as a creditor. If so, he surely cannot retain, because it is a debt of his own. 2 *Black. Com.* 511. *Coulter's case,* 5 *Co.* 30. Before appellant can claim to retain this debt, or *recoupe* it in damages, he must not only shew, that it was properly a debt due from *Dr. Haslett's* estate, and paid by him in the due course of administration, and that the estate was solvent, but the court must also be satisfied, (and the *onus* of proof would be on appellant,) that the goods, whose value was found by the jury, *were all the* goods of *Dr. Haslett* which came to appellant's possession. It is not now recollected whether the record shews the difference between the *goods declared for, and those proved* to be in appellant's possession. But it is contended, that in order to enable him to retain under any circumstances, he must shew that the verdict of the jury comprehended all the property of *Dr. Haslett* in his appellant's possession, or which had been in his possession.

It is not denied that the acceptance of a promissory note by a creditor, for a precedent debt, would not operate as an extinguishment of the original cause of action, unless it was so accepted by the creditor. It is not denied, that if the note so given be not paid, that the creditor might proceed against his debtor on the original cause of action. But it would seem that this is a right limited to the creditor, on the non-payment of the note. In this case, the notes

given by *Mrs. Haslett* to *Heslip were paid.* Could *Heslip*
after that payment, have recovered his original debt from
*Dr. Haslett's* executors? If he could not, can any one else
do so? There was no assignment from *Heslip* to appellant.
If surety at common law, pays debt of his principal, he
may recover from his principal. Appellant was not surety
for *Dr. Haslett*, but for *Mrs. Haslett*, acting in her indivi-
dual capacity. If he paid it as her surety, he must look
to her estate. The debt was paid to the creditor of *Dr.
Haslett*, by the executor of *Dr. Haslett.* The mode of
payment cannot vary the principle. It is still a payment
to the creditors, not a purchase from him of the debt; for
had it been a purchase, there would have been an assign-
ment from him. The cases cited by counsel of appellant do
not, it is thought, apply to the circumstances of the case.

When a note is given for a pre-existing debt, it is to be
considered as collateral security for the debt, or a discharge
of the debt, according to the agreement between parties:
see appellant's authorities. What the agreement between
the parties was, in this case, was a question for the Court,
the only evidence offered, being the *written instrument*
produced by appellant.

There are no words in the *receipt*, to restrain the mean-
ing of the term payment: does not this term, in its usual
acceptation, denote an *absolute* payment and *discharge*, as
fully as if those words were used?

The authorities cited by appellant, shew that when a
note is received for a pre-existing debt, it extends the time
for payment of the debt, until the note becomes due; the
notes in this case, were both paid before due, and a smaller
sum than their amount taken in discharge of them, as ap-
pears by the receipts upon them. The debt then, from *Dr.
H's* estate, was not payable at the time when the notes
were paid, and could not have been sued for by *Heslip.*

The only effect produced by the payment of *A. H's* notes,
was to substitute her executor in the place of *Heslip*, the
original creditor, and create a debt from the estate of *Dr.*

*Haslett,* to the appellant, as executor of *A. H.;* and he stands in precisely the same situation in which he would have stood, if the notes of *A. H.* had extinguished the debt to *Heslip,* when they were first given. He is a creditor of the estate of *Dr. H.,* seeking to discount his debt from the amount to be recovered in this action. Whether the debt be due to him individually, or as representative of another, can make no difference; the maxim of law that no man shall take advantage of his own wrong, equally applies. And the policy of the law which prohibits a retainer for his own debt, by an executor *de son tort,* would be equally invaded, whether the debt were due to him in his individual, or in a representative capacity.

The *second* exception being abandoned, the views of the appellee's counsel are omitted.

3d Exception. The Courts of Maryland cannot recognise administration granted in another State. Such letters give no authority. The administrator so appointed cannot sue, cannot exercise any right, power or control over the personal estate of the deceased, in this State. Letters of administration granted by another State, are considered here as mere nullities. *Act of* 1813, *ch.* 165, by which power is given to persons having letters testamentary, or of administration in the District of Columbia, to prosecute and recover claims in this State. It is declaratory of the received law on this subject. *Fenwick vs. Sears' adm'rs,* 1 *Cranch,* 259; as strong a case in support of the principle here contended for, as could well be presented to the Court. When the letters of administration in that case, were first granted, their operation extended to the *District of Columbia,* but after the cession, they were considered by the Supreme Court of the United States, as of no authority or validity there. The case of *Morrel and others vs. Dickey,* 1 *Johns. Ch. Rep.* 153, is to the same effect. *Chancellor Kent* says, "it is well settled, that we *cannot take notice* of letters testamentary, or of administration granted abroad, and that they give no authority to sue here;" he also says, "this

case (where a guardian appointed by the *Orphans Court of Philadelphia* was the complainant) is within the reason of the rule," and refers to *Fenwick vs. Sears, and Goodwin vs. Jones,* 3 *Tyngs' Rep.* 514, *and Riley vs. Riley,* 3 *Day,* 74. If our Courts cannot notice foreign letters of administration, no act can be valid under them; for it will be recollected, that administrator derives his right from the letters of administration only, and not from any act of the deceased. Appellee could not, therefore, by virtue of letters granted in *Delaware,* justify the taking of the goods and chattels of *Dr. Haslett,* but is answerable to the appellee in the same manner, as if no such letters had been granted.

There is no legal evidence of such letters in this cause, they should be produced, or their absence accounted for to authorise secondary evidence to prove their character and contents. The act of Congress of May 26, 1790, *ch.* 11, says, that records and judicial proceedings are to be certified, &c. In this case, the record and judicial proceeding itself, is not certified. It is merely stated, that there were such proceedings, without sending the record or certifying it.

BUCHANAN, Ch. J., delivered the opinion of the Court.

There are three bills of exceptions, upon which this case is brought before this tribunal.

The suit is an action of *Trover,* by the appellee as administrator *de bonis non,* of the estate of *William Haslett,* with the will annexed, for certain goods and chattels which belonged to *William Haslett,* his testator, and were left unadministered by *Ann Haslett,* deceased, whom in his will he constituted his executrix.

The *second* exception was abandoned in the argument, by the counsel for the appellant, and clearly could not be sustained. The prayer assumes the fact that the appellee was a purchaser, at a sale by the appellant, as executor of *Ann Haslett,* of a part of the property belonging to the estate of *William Haslett,* and in controversy in this suit, (though

without stating what part of the property in controversy,) and upon that assumption, asks the opinion of the Court to the jury, that the appellee is not competent to deny the legality of the sale, nor entitled to recover the value of the property so assumed to have been bought.

Now besides, that whether there had been such a purchase or not by the appellee, was a matter proper to be left to the jury, the fact assumed does not appear in this part of the cause. There is no evidence connected with this bill of exception, that the appellee ever purchased any part of the property in controversy, or any goods that belonged to the estate of *William Haslett*, and the Court could not have done otherwise than reject the prayer, even if the fact assumed, had it been proved, would have justified such a direction. But if, in point of fact, the appellee did in November, 1814, purchase at a public sale by the appellant as executor of *Ann Haslett*, a part of the property, for which this suit was brought, it by no means follows that he should not for that reason, be permitted to deny the propriety, or legality of that sale, nor entitled to recover *quo ad* the property so sold. He was not then the *administrator de bonis non* of the estate of *William Haslett*—his letters of administration were not issued until the 21st July, 1821, more than six years afterwards; and there is no proof in the record, that he knew any part of the goods sold to have been the property of *William Haslett*, if in truth they were, or that he intended in any manner to intermeddle with that estate. He did no wrong himself, and did nothing to lead the appellant into any error, nor was there a semblance even of any management or collusion between them. He was as a mere stranger, and had the same right to purchase at a public auction, that any other had; and there is no reason why the appellant, who sold the goods as the executor of *Ann Haslett*, and received the fruits of that sale, should be protected against a recovery of the value, in an action of trover by the appellee, who afterwards became the *administrator de bonis non* of *William Haslett*, by the mere fact,

that he was himself the purchaser, under circumstances calcu-
lated to induce the belief that they belonged to the estate of
*Ann Haslett.* It is of no consequence who was the pur-
chaser. The appellant wrongfully taking and selling the
goods, became answerable for their value; to which the
appellee, on obtaining his letters of administration, became
entitled, as the legal representative of *William Haslett,* and
it is not a case within the principle, upon which *Whitehall
vs. Squire* was determined in *Carth.* 104, where the plain-
tiff having received from the defendant, a horse that be-
longed to the intestate for services performed about the
funeral of the intestate, at defendant's request, afterwards
administered on the intestate's estate, and brought an action
of *trover* against the defendant, for the value of the horse so
received by him before he administered; it was decided by
two judges against *Holt,* that he was not entitled to recover,
because he was a *particeps criminis,* in the very act of
wrong complained of, the intermeddling with the estate,
and receiving a part of it in discharge of a claim, from the
hands of one, having no authority to deliver it.     There is
no pretence of any such intermeddling by the appellee
here.

The third exception rests upon the legal effect of letters
of administration with the will annexed, of the goods and
chattels of *William Haslett,* granted in the State of *Dela-
ware* to the appellant. By the testamentary system of this
*State,* the manner in which assets are to be distributed is
prescribed, and the administrator is to give bond and secu-
rity, and render an account of his administration in the Or-
phans Court.   And it is the settled and well known law of
the *State,* that letters testamentary, or of administration
granted in another *State,* give no authority to sue, or to ad-
minister assets here.   Our Courts can take no notice of let-
ters testamentary, or of administration granted abroad ; and
the same law prevails generally in this country, and it is also
the law of *England.* If that be the case, and we can take
no notice of the letters of administration granted to the appel-

lant in the State of *Delaware*, how can they have the effect to make legal and valid, any possession taken, or sale made of the property of *William Haslett* by the appellant, and to exempt him from liability in an action by the rightful administrators. So far as concerns his liability in this suit they are as blank paper, and cannot legalize acts otherwise *tortious*; it is as if he had no letters, and could not therefore rightfully take possession of, and sell the property of *William Haslett*; but in doing so without any authority known to the laws of the State, was a wrong doer, and cannot protect himself under cover of that, which gave him no authority to act. Moreover, for aught appearing in this exception, the appellant did not take possession of, and sell the property, under any supposed authority derived from the *Delaware* letters of administration; on the contrary, the proof as set out in the record is, that he took possession of the property in controversy and sold it, as the executor of *Ann Haslett*, which he could not do under letters of administration upon the estate of *William Haslett*. The Court therefore did right in refusing to direct the jury as prayed; "that the possession, and sale so proved, of the property in dispute by the appellant, was so far legal and valid, as not to render him liable in this action to the appellee."

We come now to the consideration of the first exception, which presents the only remaining question in the cause to be disposed of, and that is, whether under the evidence stated in this bill of exception, (out of which we cannot look to the testimony contained in any other exception, and not connected with this) the appellant was entitled to have *recouped* in damages, the payments made by him to *John Heslip*, who was a creditor of *William Haslett*. This being an action of *trover* by the rightful administrator for the value of the goods mentioned in the declaration.

The proof as stated is, that the goods belonged to *William Haslett* the testator of the appellee; and after his death were taken by the appellant and converted to his use. That *William Haslett* died indebted to *John Heslip*, in the sum

of $1261 40; that *Ann Haslett*, executrix of *William Has-lett*, on the 4th May, 1814, gave to *John Heslip*, her two promissory notes endorsed by *John W. Glenn & Co.* in whose favor they were drawn, one for $612 85, payable six months after date, and the other for $648 55, payable eighteen months after date, making together the sum of $1261 40, the amount of his account against *William Has-lett*; at the foot of which account, he wrote a receipt for the notes so given him, which is in these words: " received of *Mrs. Ann Haslett*, executrix of *William W. Haslett*, two promissory notes signed by herself, and endorsed by *John W. Glenn & Co.* in payment of the above account." That afterwards and before the institution of this suit, the appel-lant, as executor of *Ann Haslett*, paid to *John Heslip*, the amount of each of those notes. For these payments he claimed to be allowed at the trial, out of the value of the property in dispute, which the Court refused to permit, on the ground that the notes given by *Ann Haslett*, and re-ceived by *John Heslip* for the amount of his claim against *William Haslett*, extinguished that debt, and made him the creditor of *Ann Haslett* for the amount of his notes, with no remaining claim against the estate of *William Haslett*.

The first enquiry then to which our attention is directed, is as to the legal effect, and operation of the acceptance by *John Heslip* of the notes of *Ann Haslett*, so given and re-ceived by him. And in the absence of all evidence upon the subject, except the receipt of *John Heslip*, at the bot-tom of his account, we think it clear, that his acceptance of *Ann Haslett's* notes did not extinguish his claim against the estate of *William Haslett*. The general rule is, that the acceptance of a security or undertaking of equal de-gree, is of itself no extinguishment of the former debt. Thus the acceptance by a creditor from his debtor of his promissory note, for an antecedent simple contract debt, does not extinguish the original debt, (both being of equal degree in the eye of the law) if it remains in the hands of the creditor unpaid, and he can produce it to be cancelled,

or show it to be lost. But he will not be suffered to re-
cover on the original cause of action, unless he can show
the note to have been lost, or produces it at the trial to be
cancelled. So too, the acceptance by a creditor of a note,
or bill of a third person, for a pre-existing debt, is no pay-
ment or extinguishment of such debt, unless the creditor
parts with it, or is guilty of laches in not presenting it for
payment in due time. *Kearslake vs. Morgan*, 5 *Term.
Rep.* 513. *Puckford vs. Maxwell*, 6 *Term. Rep.* 52. *Bi-
shop vs. Rowe*, 3 *Maul. and Sewl.* 362. *Swinyard vs.
Bowes*, 5 *Ib.* 62. *Burdick vs. Green*, 15 *Johns. Rep.*
247. *Ins. Co. vs. Smith*, 6 *Harr. and Johns.* 166, or un-
less in either of the cases put, there is an express agree-
ment by the creditors to receive it absolutely as pay-
ment, and to run the risk of its being paid. In which case
it is to be taken, as an extinguishment, or payment of the
precedent debt, whether the note or bill be afterwards paid
or not. *Clark vs. Mundal*, *Salk Rep.* 124. 7 *Term. Rep.*
60. *Tobey vs. Barber*, 5 *Johns. Rep.* 68. *Johnson vs.
Weed*, 9 *Ib.* 310.

The expression, "in payment of the above account" at
the end of *John Heslip's* receipt for *Ann Haslett's* notes
are the only words used, that can be supposed to have any
tendency to show that he had agreed to receive them in full
and absolute discharge of his prior debt, and to take upon
himself, the risk of their being paid, or not; which is the
agreement necessary to be proved, to give to his acceptance
of them, the effect to extinguish the pre-existing debt, (the
notes having never passed from his hands until taken up by
the appellant) and for that purpose his receipt is relied
upon. But it would be going very far to say, that the
mere use of the words, "in payment of the above account,"
furnishes proof of such an agreement. It could be but
an inference, and that stronger than the words will bear,
or the character of such transactions justify. If there
had been any such agreement, the presumption is, (if
presumption can be indulged in) that it would have been

stated in the receipt. The very negotiation upon the subject would have indicated the expediency of its being so stated. And in the absence of any such statement, are we at liberty to infer it? And infer it from what? Not from that, which (in the ordinary use of the terms) naturally points to such an agreement, and which if unexplained, would admit of no other fair inference; but from that, which looking to the character of such transactions, may well be understood to have been intended, as an acknowledgment only, that the notes were given for, and on account of the precedent claim against the estate of *William Haslett* ; to show what was the consideration of the notes, and to furnish *Ann Haslett* the executrix, with a necessary document in the settlement of her accounts ; not an acknowledgment that the original debt was absolutely paid, nor of an agreement to take the notes in absolute payment, and to discharge the estate of *William Haslett* from all further liability ; but only that the notes when paid, should be in discharge of the original debt, showing on what account they were given, and to prevent a recovery on both causes of action.

This would seem to be the fair understanding of the receipt, no motive appearing to induce *John Heslip,* to take the notes in full and absolute payment, and to discharge the estate of *William Haslett*. And it is believed to be in accordance with the usual understanding of such receipts, creditors not being presumed when they take the notes of third persons, on account of precedent debts, to intend to receive them in absolute payment, and extinguishment of such debts; but only *sub modo,* that is, in the event of their being paid, unless otherwise expressed in the receipts, and we are not without judicial decisions in consonance with this view of the subject.

In *Keaslake vs. Morgan,* 5 *Term. Rep.* 513, it was conceded, that a promissory note of a third person accepted, and received by a creditor, " for, and on account of a debt due him," was not of itself an extinguishment of that debt.

And what is a receipt *of a note in payment of a debt*, more than *a receipt for, and on account of a debt*. Money received *for, and on account of a debt*, is received in payment of it.

In *Puckford vs. Maxwell*, 6 *Term. Rep.* 52, where the plaintiff had accepted a bill in part payment of his debt, *Ld. Kenyon* said, "if the bill which is given in payment, do not turn out to be productive, it is not that which it purports to be, and which the party receiving it, expects it to be, and therefore we may consider it as a nullity, and act as if no such bill had been given." There the fact of a note being given in payment, was held not to be an extinguishment of the debt. And what is this receipt more than an acknowledgment, or evidence of the same fact, that the notes were given in payment.

The same principle has been followed out in the Courts of *New York*. In *Tobey vs. Barber*, 5 *Johns. Rep.* 68, there was a receipt by a landlord to his tenant in these words, "received of *Ralph Barber* $163 on account of the within lease, and in full for the second, and third quarters rent." It turned out in evidence that the sum of $163, mentioned in the receipt was made up in part of money paid by the defendant to the plaintiff, and in part of a note of a third person given to the plaintiff, and it was decided, that there was no evidence that the plaintiff agreed to run the risk of the solvency of the maker of the note, and to take the note in absolute payment, except by inference arising from the receipt, which was not enough to establish such a positive agreement. There was a receipt in full purporting to be for cash, which might have afforded some ground for supposing that the plaintiff intended to treat the note as cash, and to put it on the same footing with the money received, which as far as it went, was a discharge of so much of the rent. It is a stronger case than this.

In *Johnson vs. Weed, and another*, 9 *Johns. Rep.* 310, where the plaintiff having sold goods to the defendants, received the note of a third person for the amount, and gave

the defendants a bill of the goods, with a receipt in full at the bottom, it was held that the terms of the receipt were not decisive, and it might be understood, consistently with the words of it, that the note was received in full, under the usual condition of its being a good note.

And in *Putnam vs. Lewis, adm'r of Lewis,* 8 *Johns. Rep.* 389, where the plaintiff having a demand against the estate of the defendant's intestate, received the defendant's promissory note for the amount, and gave him a receipt in these terms, " received of *George R. Lewis,* \$53 96, it be-- ing in full of all demands which I have against the estate of *Eber Lewis,* deceased," it was decided that the note was no payment of the debt.   That case and this, are nearly iden- tical, and if there be a difference, that is the strongest case. There can be no real distinction between a receipt in full of all demands, and a receipt in payment of all demands. In both cases the notes were given by the representatives of the deceased, for debts due from the deceased, and the only difference is, that in this, the receipt is for the notes themselves, and in that case the receipt was for the money, specifying the amount, and so far at least, treating the note, (which was all that was in fact received) as money.

To give to the acceptance of a note the effect of an abso- lute payment, or extinguishment of a debt, a contract that it should be so, must be shown; an express agreement to re- ceive it as payment, and to run the risk of its being paid, which is not sufficiently done by the receipt in this case, to justify us in saying that the claim of *John Heslip* against the estate of *William Haslett,* was extinguished by his accept- ance of *Ann Haslett's* notes.

Considering then, the claim of *John Heslip* as not extin- guished until the notes of *Ann Haslett* were paid, but his right of action only suspended during the period allowed for the payment of the notes, was the appellant who made the payment, entitled to have them *recouped* in damages.

It has been suggested by the counsel for the appellee, that it is incumbent on the appellant to entitle himself to the

allowance he claims, to show the solvency of the estate of *William Haslett.* No question appears to have been raised in the Court below upon that subject, and it will be considered here as if there was no deficiency, indeed it is not suggested, nor does there appear to be any deficiency; treating it then, as a case clear of all question relative to the sufficiency of assets, if it was a suit by a creditor of *William Haslett,* there could be no doubt, on the plea of *plene administravit,* that he would be entitled to an allowance for the payments made to *John Heslip,* if they are to be taken as payments of *John Heslip's* claim against the estate of *William Haslett.*

There are acts of intermeddling, such as locking up the goods of a deceased person for safe keeping, which will not charge a man as executor of his own wrong; but the taking the goods of an intestate by a stranger, and using or selling them, and in general any intermeddling with them, will as respects creditors, make him an executor *de son tort,* and chargeable with the debts of the deceased, so far as assets come to his hands. But as against creditors he is justified, in paying the debts of the deceased; and if sued by a creditor he may plead *plene administravit,* and will be allowed all payments made of just debts, to any other creditors in equal or a superior degree, or in the due course of administration; though he cannot, in any case, retain any part of the goods of the deceased in satisfaction of a debt due to himself. There is, however, a difference between a suit by a creditor, against an executor *de son tort,* and one by a rightful executor or administrator. If the action by the latter be *trover* for the goods of the deceased, the defendant cannot plead payment of debts to the value, or that he has given the goods in satisfaction of the debts. But on the general issue pleaded, he may give in evidence such payments, and they will be *recouped* in damages, if they be such as the plaintiff would have been bound to make, or in the language of some of the books, made in due course of administration. *Carth.* 104. *Bull. N. P.* 48. *2 Blk. Com.*

507. *Mountford vs. Gibson*, 4 *East. Rep.* 441. *Toll. L. Ex'rs*, 363, 364. *Parker vs. Kelt*, 12 *Mod.* 471.

What then is this case? We have already said, and attempted to show, that the acceptance of *John Heslip*, of the notes by *Ann Haslett*, was not a payment or extinguishment of his claim, against the estate of *William Haslett*, but that the original debt continued, notwithstanding the receipt of those notes. Had *Ann Haslett* paid those notes, she would, by doing so, have discharged the original debt—and the payments having been made by the appellant as her executor, makes no difference. They were her notes, and he as her executor was bound to pay them, if assets sufficient came to his hands; and in paying them, he paid the original debt, on account of which they were given. It is not the payment of the notes, as the debts of *Ann Haslett*, on which his claim to *recoupe*, rests; but the payment of the original debt that remained in force, until discharged by him, with which the amount of the notes was identical. Where it is said that the payments to be *recouped* in damages, by an *executor de son tort*, in *trover* by a rightful executor or administrator, must be such as are made in the due course of administration, it is meant, such as the rightful executor or administrator would have been bound to make, as where the debts were just, and no deficiency of assets. And that is this case. The payment by the appellant of the claim of *John Heslip*, against the estate of *William Haslett*, was such as the appellee would have been bound to make, and we think he was entitled to have the amount *recouped* in damages.

The cases of *Mountford, adm'r of Holland vs. Gibson*, 4 *East.* 441, and *Fiswick vs. Sewell*, 4 *Harr. and Johns.* 399, referred to by the counsel for the appellee, are not like this.

We *concur* with the Court below, in the 2d and 3d exceptions, but *dissent* from the opinion expressed in the 1st, and therefore reverse the judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.