## Joseph C. Yates *vs*. Samuel C. Donaldson.

Where two are by agreement jointly bound for a debt contracted for the purchase of property, which as between themselves they were to own in different proportions, if either pays the whole or more than his share, he can recover the excess from the other, and his right of action accrues on the expiration of the time at which the creditor could have sued upon the agreement.

The acceptance of a security or an undertaking of an equal degree does not extinguish the former debt, unless it be received in satisfaction, or be intended as an abandonment of the remedy on the first contract, and these are questions for the jury.

The acceptance of promissory notes suspends the remedy on the first contract until the notes mature.

Giving time to a principal will discharge the surety, but where two are jointly bound as principals, it cannot be shown, at law, when both are sued, that one is surety for the other, and giving time to the one does not discharge the other.

Where two are jointly bound as principals, if one be released both will be, except in a case where the remedy against the other is expressly reserved.

It is no defence to an action against one of two makers of a promissory note, that he made it as surety for another, and for his accommodation, which fact was known at the time to the payee, the plaintiff; and that after it became due, the plaintiff gave time to the other maker without defendant's consent.

The payee of a joint and several promissory note made by two can be placed in a situation for treating one as surety for the other, only by his express assent to do so when the note was delivered to him.

The maker of an accommodation note is liable to the holder, though the latter knew at the time the note was made that it was for the accommodation of the endorser, and giving time to the endorser will not discharge the maker.

There is no difference between accommodation notes and those negotiable for value; the court will look to the relation that the parties bear to each other on the instrument, and determine their legal liability accordingly.

Where a party does not appear upon the instrument as surety, he cannot, *at law*, avail himself of the equities between himself and the other parties to the instrument, unless he be accepted by the creditor as surety, or has been discharged from the first contract by agreement of the creditor.

If a creditor assents to an arrangement between his two joint debtors to give two separate notes for their respective shares of the joint debt, provided the notes were satisfactory to him, and one of the debtors complies with this arrangement, and the creditor accepts notes from the other as performance of his part, it amounts to a discharge of the debtors from the first contract.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* by the appellant against the appellee and one Garland, to recover the balance due for the "*Western Continent*," a newspaper sold by plaintiff to defendants. Plea *non assumpsit.*

*Exception.* The proof shows that Garland, intending to be owner of two-thirds, and Donaldson of the other third of said paper, and Yates knowing the proportions in which they intended respectively to own it, the following agreement, in writing, dated the 23rd of June 1848, and signed by Garland and Donaldson, was entered into between the parties:

"We agree to purchase from Mr. J. C. Yates the '*Western Continent*' as it stands, with subscription list, &c., for the sum of seventeen hundred dollars, payable one-half in a satisfactory note at six months from 1st July; four hundred and twenty-six dollars in nine months from this date; and the balance in twelve months from same date: all bearing interest from 1st July."

Afterwards, in December 1848, Garland and Donaldson made an arrangement to give separate notes each, for his share of the purchase, to which Yates agreed, "Provided the notes were endorsed to his satisfaction." With this agreement Donaldson complied, and the notes given by him for his third were duly paid at maturity; but Garland says he never complied with his part.

Yates several times called upon Garland for satisfactory notes for his two-thirds of the purchase money, and in December 1848, the latter gave Yates a note of one Bailey for $441.21,

which was paid at maturity. In January 1849, one Homans purchased from Garland one-half of his interest in the paper for $1000, and gave him several notes therefor; two of which, one for $300.52, and the other for $296.26, were, in Homan's presence delivered to Yates, on account of what was still due for Garland's two thirds. Homans says that Yates expressed himself satisfied, and accepted the notes; but Garland says Yates took them, with his endorsement, as an accommodation to him, advising him that he did not think they would be paid, and to get himself secured. These notes were never paid, and constitute the balance for which the suit was brought. All the negotiations for the sale to Homans were carried on between Homans and Garland, exclusively, as to amounts and time; and between those two and Yates, exclusively, as to the acceptability of Homan's proffered notes: Donaldson not being consulted in reference thereto. Garland says there was no understanding between Yates and himself, at the time the separate notes were taken, or at any other time, by which the former stipulated to divide the responsibility of the parties, and forego his remedy against either, for the amount of the notes given by the other, in case they should not be paid; but Homan says he was led to believe that Yates considered Garland alone liable for his two-thirds of the purchase. Upon this proof the plaintiff asked instructions, in substance as follows:

1st. That he was entitled to recover from Donaldson the amount of purchase money due under the original agreement, and then unpaid, unless the jury should believe that the notes were received under an express agreement to receive them as absolute payment to the amount thereof, and run the risk of their being paid.

2nd. Or unless they should believe that the giving and taking of the notes, was intended by and between the parties as an abandonment by Yates of his original claim against the defendants jointly.

3rd. That whether the notes were accepted by Yates as satisfactory was a question for the jury.

4th. That whether the parties, by the transaction in refer-

ence to the notes, intended, as between themselves, an extinguishment of the joint liability and an acceptance in its stead of a separate liability, according to the tenor of the notes, was a question for the jury.

5th. Even if the notes were accepted as satisfactory by the plaintiff, the acceptance of them did not extinguish the joint liability of the defendants, unless they were accepted under an agreement to receive them as absolute payment and run the risk of their being paid, or unless the giving and taking was intended, by and between the parties, as an abandonment by Yates of his original claim against the defendants jointly and a severance of their joint liability.

6th. If the giving and taking of the notes was merely an arrangement between the parties, made for the accommodation and at the request of the defendants, in order to facilitate the adjustment of their respective interests in the property, without its being intended, by either plaintiff or defendants, that the joint liability of the latter to the plaintiff under the original agreement should be altered thereby, or his ultimate remedy against them jointly be thereby affected, then such giving and taking of the said notes did not, nor did the payment of such of them as had been paid, preclude the plaintiff from recovering from the defendants in this action such part of the purchase money as was still due and unpaid.

7th. That the knowledge by the plaintiff of the unequal interests of the defendants in the property, and the giving and taking of the notes, were not, of themselves, either separately or together, conclusive in law as to the abandonment or loss by the plaintiff of his right against the defendants jointly, but that it was for the jury to judge whether it was intended by and between the parties to alter their rights under the original contract, or sever the liability of the defendants.

The defendant then asked the following instructions:

1st. If Garland and Donaldson owned, with the knowledge of the plaintiff, different interests in the property, and made an arrangement among themselves to give the plaintiff separate notes, each for his share of the purchase money, and the

plaintiff, in pursuance of said arrangement, accepted from Donaldson three notes for one-third of the purchase money, such being his share according to said arrangement, and the said notes were paid at maturity, Donaldson was discharged from all liability on account of the purchase money due for the other two-thirds.

2nd. If the plaintiff, after agreeing to the said arrangement, called on Garland for endorsed notes for his proportion of the purchase money, and subsequently accepted from him Bailey's note, which was paid, and, in January 1849, Homans agreed to purchase the half of Garland's interest for $1000, and the plaintiff agreed with Garland to take Homans' notes for the amount still due for Garland's two-thirds, provided they were satisfactory to him, (the plaintiff,) and did actually accept them, then Donaldson has been discharged from all liability on account of the purchase money due for said two-thirds interest.

3rd. If there was an arrangement, either express or implied, between the plaintiff and Donaldson, subsequent to the execution of the original agreement, that Donaldson should give satisfactory notes for one-third of the purchase money, on the payment of which he was to be discharged from all liability for any other part of said purchase money, and the said notes were given and accepted for the said amount and paid at maturity, the plaintiff was not entitled to recover against Donaldson.

The court, (FRICK, J.,) rejected all the prayers of the plaintiff and granted all those of the defendant. To this ruling the plaintiff excepted. Judgment was confessed by Garland, and the verdict and judgment being in favor of Donaldson, the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*F. K. Howard* and *S. T. Wallis* for the appellant, argued the following points:

1st. Though the appellant knew that Garland and Don-

aldson intended to own the paper in different proportions as between themselves, yet they nevertheless purchased it from him, and by their agreement bound themselves *jointly*, and without regard to such proportions, for the whole purchase money, and the subsequent giving and taking of notes was not, under the circumstances, a payment *pro tanto* of such joint liability, unless there was an *express agreement* to receive them as payment. The court therefore erred in refusing the appellant's *first*, and granting the appellee's *first* and *second* prayers. 2 *G. & J.*, 509, *Glenn vs. Smith.* 8 *Gill*, 177, *Md. and N. Y. Coal and Iron Co., vs. Wingert.* 1 *Md. Rep.*, 514, *Hunter vs. Van Bomhorst.*

2nd. The transaction in reference to the notes did not operate as a severance or extinguishment of the joint liability assumed by the original agreement, unless it was agreed or intended by the parties that it should so operate, and whether there was such an agreement or intention was a question of fact for the jury, as was also the question whether the notes were satisfactory to the plaintiff. The court therefore erred in refusing the appellant's *second, third, fourth, fifth* and *seventh prayers. Collyer on Part.*, secs. 487, 559, 560, 563, 569. *Story on Part.*, sec. 158. *Abbott on Shipping*, 116. 5 *Whart.*, 538, *Estate of Davis and Desauque.* 4 *Watts & Seargt.*, 100, *Mason vs. Wickersham.* 4 *Metcalf*, 25, *Wildes vs. Fessenden.* 6 *G. & J.*, 71, *Crawford vs. Berry.*

3rd. The court erred in refusing the appellant's sixth prayer, thereby treating an arrangement made at the request and merely for the accommodation of the defendants as an extinguishment of their joint liability, although they and the plaintiff both intended that it should not produce that effect.

4th. Even if the plaintiff agreed to take from Donaldson notes for less than the whole amount of his liability in satisfaction thereof, it was an agreement without consideration, and not binding on the plaintiff. The court therefore erred in granting the appellee's third prayer. 4 *G. & J.*, 305, *Geiser vs. Kershner.* 30 *Maine Rep.*, 413, *Chase vs. Vaughn.*

*Thomas Donaldson* for the appellee.

The question is not whether the receipt of the notes was an absolute satisfaction of the pre-existing debt without an express agreement to that effect, but whether, where two joint debtors agree each to pay his separate portion of the debt, and this *arrangement is assented to by the creditor*, provided notes with satisfactory endorsements are given by each debtor respectively, and the creditor *accepts notes from one for his portion of the debt*, which are duly paid, such debtor is discharged from all liability for the portion due by the other? As to the general principle, as to what kind of agreement will sever a joint liability, see *Story on Part.*, sec. 158. There need not be an *express* agreement; it may be *implied*, and the subsequent conduct of the party who knows of the agreement is sufficient; so is a prolonged credit. See 5 *Barn. & Adol.*, 927, *Thompson vs. Percival.* 4 *Esp.*, 89, *Evans vs. Drummond.* 5 *Esp.*, 122, *Reed vs. White.* *Collyer on Part.*, secs. 559, 560. 2 *Mees. & Wels.*, 484, *Hart vs. Alexander.* If a party deals separately with one of two jointly bound, he puts them upon the footing of principal and surety. 4 *Wash. C. C. Rep.*, 98, *Harris vs. Lindsay.* 10 *Bligh. N. S.*, 550, *Oakeley vs. Pasheller.* Where parties agree to give notes and do not comply, they cannot be sued on the original debt until the time of the notes has run out, but may be sued immediately for a breach of this special contract. 21 *Wend.*, 90, *Hanna vs. Mills.* *Ibid.*, 175, *Yale vs. Coddington.* The only possible meaning of the arrangement for giving separate endorsed notes, each for his portion of the purchase money, was to separate the liability of the parties; if their liability remained unchanged the arrangement was a nullity, without any purpose or effect so far as it regards the joint debtors. By agreeing to take separate notes, Yates elected to consider Garland and Donaldson in the relation in which they stood as between themselves, that is as *sureties* for each other, and consequently, by receiving from Garland the notes of Bailey and Homans, he released Donaldson from all liability on account of Garland's portion of the debt.

Tuck, J., delivered the opinion of this court.

By the agreement of 23rd June 1848, the appellee and Garland became indebted to the appellant. As between them Garland owned two-thirds of the property, and Donaldson one-third; and this was known to the appellant at the time. If either had paid the whole or more than his proportion he would have been entitled to recover from the other for such excess, *Owens vs. Collinson*, 3 *G. & J.*, 25; and his right of action would have accrued on the expiration of the time at which Yates himself, could have sued upon the agreement.

It appears that before the expiration of that time, and before compliance with the agreement, by the delivery to Yates of notes for the amounts, and at the times stipulated, the purchasers made an arrangement between themselves to give separate notes for their respective interests, to which Yates assented, provided they were endorsed to his satisfaction. With this agreement the appellee complied, but it does not clearly appear whether Garland did or not. He says that he did not; but Homans states that two of his notes, (for the amount due by Garland,) were endorsed and delivered to Yates; that he expressed himself satisfied and accepted them. Garland also states that the negotiation for the sale to Homans was carried on between them alone; and between Yates, Garland and Homans, as to the acceptability of Homans' notes, which Yates had agreed to take from Garland if they were satisfactory to him. The principle is well settled, that the acceptance of a security or undertaking of equal degree does not extinguish the former debt, unless it be received in satisfaction, or be intended as an abandonment of the remedy on the first contract. It is equally clear that these are questions for the jury. Such an arrangement, however, suspends the remedy on the first contract until the notes mature. *Glenn vs. Smith*, 2 *G. & J.*, 493. *Hunter vs. Van Bomhorst*, 1 *Md. Rep.*, 504. It follows, from this state of the law, that the prayers offered by the appellant should have been granted, except the *sixth*, unless there be something in the case overlooked in framing the prayers, to the benefit of which the appellee was

entitled in submitting the law of the case to the jury. And as to the sixth the instruction would also have been proper, if it had not submitted to the jury, the finding of a fact of which there was no evidence whatever, to wit, that the acceptance by Yates of Homans' notes was at the request, and for the accommodation of both the parties, Garland and Donaldson.

It is contended, however, on the part of the appellee, that the knowledge by Yates at the time of the purchase, that the purchasers held separate interests, and his afterwards dealing with them separately, for the security of their respective proportions of the debt, and accepting Homans' notes, in the manner stated in the evidence, without the knowledge of the defendant, by which time was given to Garland, have discharged the appellee from all liability on the original contract. If Donaldson had been merely surety for Garland this view of the case would be certainly correct; for time given to a principal will discharge the surety, because it places him in a new situation in reference to the principal debtor. But here both parties are principals according to the agreement, and how can it appear that a party to a joint contract is a surety for part of the debt, except by going out of the instrument? Can this be done at law where both are sued? If one be released both will be, except in a case where the remedy against the other is expressly reserved, as in *Clagett vs. Salmon*, 5 *Gill & Johns.*, 354, and the cases there cited. Where the act of the creditor operates a release of the surety, there can be no difficulty in enforcing this principle. The remedy is gone entirely. But in a case where both are principals, how are the equities between them to be adjusted in a suit at law by the creditor against both? If time given to one released the other, the discharge would avail only to the extent of that portion of the debt which was due by the party to whom time has been given. The party not indulged would, at any rate, be liable for his own proportion of the debt. Supposing that this might be easily worked out to its proper result in a case like this, where one party is liable for one-third, and the other

for two-thirds, and the verdict is to be rendered against one only, because the other has confessed a judgment, the difficulty of doing complete justice among all the parties, is apparent in a case where there are several parties to the contract, who are defendants in the cause, liable in different proportions as among themselves, though all responsible to the creditor in the first instance. It would be impossible to render a judgment upon any adjustment of these equities. The judgment at law must be for the same amount against all the defendants. It is not a sufficient answer to say that the appellee paid his share, and that therefore this difficulty could not arise. We are dealing with a principle, upon which, the party, if discharged at all, was exonerated at the moment the indulgence was given by the arrangement with Garland as to Homans' notes. At which time the appellee's part had not been paid, because the notes passed for his share did not *per se* extinguish his liability.

We have not been referred to any case at law, in which such a defence has availed, while there are some to the contrary. In *Bedford vs. Deakin*, 2 *Barn. & Ald.*, 210, one of the members of a dissolved firm undertook to pay the joint debts, and this was made known to a creditor who received his notes for the amount of the joint indebtedness, which notes were subsequently renewed, and not paid, the original partners were held liable on the joint note. It is true that the creditor reserved his remedy on the first note and retained possession of it, and sued on it; but all this was unknown to the other partner. The creditor had given time, without his assent to the settling partner, and he had failed after being so indulged. The judges, Abbott, Bayley and Holroyd, agreed that the first debt was not extinguished. They notice the very argument employed in this case, the injury to the appellee by preventing his recourse on the agreement if he had paid the debt, by saying that as joint debtor, it was his duty to have seen the debt was paid; and the last judge says: "The dishonor of the bill gave a right of action against all the partners, and the circumstance of a creditor

giving time to one of three joint debtors will not discharge the others, nor even suspend his right of action against them." In *Manley vs. Boycot*, 18 *Eng. Law & Eq.*, 357, the defendant, who was one of the makers of a promissory note, to an action against him by the payee, pleaded that he made the note as surety for another and for his accommodation, which was known at the time to the payee, and that after the note had become due the plaintiff gave time to the other maker, without the consent of the defendant. It was held, that this was no defence to the action. Lord Campbell said, "that the plea was bad in not alleging that the note was delivered by the defendant as surety for the other party. The *bona fide* holder of a bill or note cannot be prejudiced in the rights which he *prima facie* has, according to the terms of the instrument, by knowledge subsequently acquired, or even by knowledge which he has at the time he takes it, if there is no evidence of a special agreement at the time when he takes it to affect the rights and liabilities of the parties. If the payee of a joint and several promissory note made in the common form by two, may be placed in a situation for treating one as surety for the other, it can only be by his express assent to do so when the note was delivered to him." The case of *Smith vs. James, same vol.* 353, *note*, is likewise in point. *Perfect vs. Musgrave*, 6 *Price*, 111. *Sprigg vs. Bank of Mount Pleasant*, 10 *Peters*, 257. See also *Rees vs. Berrington*, 2 *Ves., Jr.*, 542, and in 2 *White & Tudor's Eq. Cases*, 707, (72 *Law Lib.*, 352,) and *Forsyth on Composition with Creditors*, *ch.* 8, in 1 *Lib. Law & Eq.*, 34, in both of which the subject is fully treated.

The same principle has been often applied in the instance of accommodation notes, where the endorser is the real debtor, as between him and the maker. Although releasing the endorser does not discharge the maker, for the reason that the latter can have no claim against the former, if he should pay the debt, it being his own, yet equities between them will not vary the legal principle, and affect the operation of the instrument, where the party seeking to shield himself, as

surety, appears to be a principal.   He will not be allowed to
deny the character in which he appears on the paper.   In
*Carstairs vs. Rolleston*, 5 *Taunt.*, 551, which was an action
by the assignees of Kensington & Co. upon a promissory note,
of which they were endorsers, and the defendants the makers;
the latter pleaded that they made the note as sureties for one
Rolleston and not on their own account, and that K. & Co.
had since released R. from all their claims against him.
Rolleston was an endorser; but the court held the release to
him was no ground of defence, the defendant being the
maker.   This, however, was a case in which the state of the
business, as between the maker and endorser, was unknown
to the holder of the note, and the court reserved its opinion in
such a case.   But in *Fentum vs. Pocock*, 5 *Taunt.*, 192, the
same point was ruled without reference to knowledge on the
part of the holder.   Mansfield, C. J., alluding to the judg-
ment of Lord Ellenborough, in *Laxton vs. Peat*, 2 *Camp.*,
185, says: "We think we are bound to differ from him, and
to hold that it is impossible for us to consider the acceptor of
an accommodation bill in the light of a surety for the payment
by the drawer, and that we cannot, therefore, say that he is
discharged by the indulgence shown to the drawer.   If the
holder had known, in the clearest manner, at the time of his
taking the bill that it was merely an accommodation bill, it
would make no manner of difference, for he who accepts a
bill, whether for value or to serve a friend, makes himself in
all events liable as acceptor, and nothing can discharge him
but payment or release."   And Lord Tenterden, in *Yallop
vs. Ebers*, 1 *Barn. & Adol.*, 698, said: "*Laxton vs. Peat*,
where it was held that an accommodation acceptor might be
considered as a surety, has been long overruled."   This ques-
tion came before the Court of Appeals in *Clopper vs. Union
Bank*, 7 *H. & J.*, 92, and the maker of the note was held
liable to the bank which discounted it, with knowledge that it
was for the accommodation of the endorser, even after the
bank had given time to the endorser.   In every bill of ex-
change the acceptor, and in every promissory note the maker,
is, in law, the principal, and is first liable, and every endorser

in the order in which his name appears on the bill or note. There is no difference between accommodation notes and those negotiated for value. The court will look to the relation that parties bear to each other on the instrument itself, and determine their liabilities accordingly.

The cases cited on the part of the appellee show, that there must be an agreement to discharge or something that amounts to an abandonment of the remedy on the first contract, and that this must be left to the jury, except in those cases where the nature of the evidence is such that the court must pass upon its construction and effect. In *Harris vs. Lindsay*, 4 *Wash. C. C. Rep.*, 271, the court said, if it be agreed on dissolution, that one member shall pay the debts, they are yet bound as principals, so that no indulgence granted by a creditor to the paying partner, which falls short of an agreement, express or implied, to take him as the debtor and to discharge the other, can place them in the situation of principal and surety so as to discharge the retiring partner. To support a defence of this kind, such an agreement must be satisfactorily made out. (See also page 98.) The retiring partner in that case was discharged, because, in the opinion of the court, "the new contract amounted to an agreement to discharge Lindsay, and the intention of the parties formed no part of the question which the jury had to decide. There were no circumstances in the case other than such as grew out of written documents, the construction and legal effect of which were proper for the consideration and decision of the court." But it was also held, that if the agreement be a mere inference from circumstances tending to show that such was the intention of the parties, the jury were the proper judges of such intention. In this case the evidence, as is insisted, was taken in writing, as by a commission, but that is not such as Judge Washington meant when he spoke of documentary proof.

The present case, however, is not as favorable to the appellee, as far as concerns the propriety of the proposed defence, as those to which we have referred. Here the defendant does not pretend that he was surety for the whole debt; his original liability for one-third is admitted. And hence, the greater

difficulty of allowing such defences, at law, than where the party claims that he was mere surety for the whole, and that he has been altogether released by the acts of the creditor. If the law be correctly stated in the cases cited, it will apply more strongly and with greater reason to the one under consideration, where the party insisting on the benefit of this equity was at any rate liable for a part of the debts.

Upon a careful consideration of the record and of numerous decisions, we are of opinion that the appellee was not discharged at law; the principle deducible from the cases being, as we think, that where the party does not appear on the instrument to have made himself liable as surety, he cannot, at law, avail himself of the equities between himself and the other parties to the instrument, unless he was accepted by the creditor as a surety, or has been discharged by the acts of the creditor, according to the principles recognized in *Glenn vs. Smith*, 2 *G. & J.*, 493.

The first of the appellee's prayers assumes that he was discharged by Yates having taken the notes of Donaldson for one-third of the original purchase money, without reference to the question of agreement to take them in satisfaction of his liability on the contract, or of intention to release him. As the case is presented on that prayer, these notes when paid amounted only to a part payment of the original debt. The *second,* we think, should also have been refused. If the plaintiff agreed with Garland to take Homan's notes in satisfaction of the amount then due by Garland, provided they were satisfactory to him, and did actually accept them, in performance of that agreement, the appellee was discharged; and had the jury been left to find that the plaintiff assented to the arrangement on that condition, that Donaldson complied on his part, and that Yates accepted Homan's notes, as performance on Garland's part, the prayer would have been proper. The arrangement, if complied with, would according to Judge Washington, have amounted to an agreement to discharge the parties from the first contract. But this prayer omits a fact material to be found, viz: the acceptance by Yates of Homan's notes, in performance of Garland's part of this new arrangement.

The *third* prayer of the appellee was also erroneous. It assumed the defendant's right to a verdict on the delivery by him to Yates of notes for his third of the purchase money, under an agreement supposed in the prayer, which the jury were left at liberty to have implied from the proof adduced, when, as we think, it was not competent for them to have found any such agreement by implication, even conceding that there was no necessity for an express agreement, in order to discharge the party.

In the case of *Oakeley vs. Pasheller*, 10 *Bligh.*, 548, (relied upon by the counsel for the appellee) before the House of Lords, on appeal from the lord chancellor, it was held that by arrangements between the surviving partners and the representatives of a deceased partner, the former had assumed a joint debt, and the latter had become sureties only, and that the extension of time granted this new firm, without the knowledge and assent of the representatives of the deceased partner, had discharged the latter; the creditor knowing that these arrangements had been made. We do not question this doctrine as between creditor and surety debtor, where that relation exists. That is the principle in *Harris vs. Lindsay*. In equity the court decides both the law and the fact; but, in cases like this, whether the relation of the parties is changed or not, depends on intention, and at law, that must be submitted to the jury. If we were sitting in equity, that case might be entitled to great weight, being an opinion of Lord Lyndhurst, affirming the master of the rolls, and the lord chancellor. We think, however, it does not contravene what we suppose to be the principles governing courts of law. Upon the remedies in equity in such cases, we express no opinion.

*Judgment reversed and procedendo awarded.*