## WATKINS' Adm'rs *vs.* STATE use SHAW, Adm'r of WELLS.
### *June,* 1830.

I and P, were joint executors of W, who left a son, for whom I was also appointed guardian. In an action brought by the administrator of that son on the guardian's bond, against one of I's sureties, it appeared that many years before the commencement of the suit, the joint executors had received a considerable amount of assets, but had not settled any account with the Orphans Court, and that P was dead: HELD, that I's guardianship ceased with the death of his ward, and as it did not appear that he died after P, and after I became sole executor, the action could not be sustained.

Where a sole executor sustains the two fold character of executor and guardian, the law will adjudge the ward's proportion of the property in his hands, to be in his hands in the capacity of guardian, after the time limited by law for the settlement of the estate, whether a final account has been passed by the Orphans Court, or not.

But where there is a joint executorship, this construction of law cannot consistently with principle prevail: because his co-executor is entitled to the possession of the assets equally with the guardian, and the property of his ward cannot be legally considered in his hands, until he has actually received it.

ERROR to *Anne Arundel* County Court.

This was an action of *debt,* brought on the 25th of October, 1815, in the name of the State, at the instance, and for the use of *James Shaw,* surviving administrator of *Richard W. Wells,* against the appellant's intestate, *Nicholas Watkins* of *Thomas,* after whose death, *Rachel H. Watkins,* and *Benjamin Watkins,* the present appellants, as his administrators, became parties to the suit, on a bond, executed by a certain *John Boyd Watkins,* as guardian of the said *Richard W. Wells,* in which the intestate of the appellants was a surety, dated on the 12th day of September, 1803, conditioned as follows: "That if the above bounden *John Boyd Watkins,* as guardian to *Richard W. Wells,* of *Anne Arundel* County, shall faithfully account with the Orphans Court of said county, as directed by law, for the management of the property, and estate of the orphan under his care, and shall also deliver up the said pro-

perty, agreeably to the order of said Court, or the direction of law, and shall in all respects perform the duty of guardian to the said *Richard W. Wells,* according to law, then the above obligation shall cease, it shall otherwise, &c." The defendants pleaded performance by the said *John Boyd Watkins.*—Replication, non-performance, and issue.

1. At the trial the plaintiff offered evidence, that the plaintiff's intestate was entitled to one-third part of the personal estate of *John Wells,* deceased; that *John Boyd Watkins,* was surviving executor of the said *John Wells,* and guardian to the plaintiff's intestate: he then produced a list of desperate debts, returned to the Orphans Court, by said *John Wells'* executors, and offered parol proof, of the solvency of *Jacob Franklin,* one of the debtors in that list, for the purpose of charging the defendant with the plaintiff's proportion of said debt, but the Court (KILGOUR and WILKINSON, A. J.) were of opinion that such parol evidence was not admissible, to charge the defendant's intestate, as one of the securities in the guardian bond, on which this suit is brought. The plaintiff excepted.

2. The plaintiff then offered to read to the jury the following paper: "General Court: October Term, 1804, *Philemon Sherwood* and *John Boyd Watkins,* Ex'rs of *John Wells, vs. John Gassaway:* Judgment for £56 7 0 current money, debts and costs; to be released on payment of £28 3 6, current money, with interest from the 15th of September, 1798, till paid and costs:" which said paper was admitted to have the same legal effect and operation, as a full transcript of the record of proceedings in said cause; and also offered to prove, by competent evidence, that said *Gassaway,* against whom said judgment was rendered, was, at the time of the rendition thereof, and for many years afterwards, in solvent circumstances, and possessed of visible property, and that the amount of the said judgment might have been collected of said defendant. The defendant objected to this evidence, as inadmissible to charge the defendant's intestate as one of the securities in the guardian's bond, on which

this suit is brought.   The court sustained the objection, and the plaintiff excepted.

3. The plaintiff then proved, that *John Boyd Watkins*, who was the guardian of the plaintiff's intestate, appointed by the Orphans Court of *Anne Arundel* County, was one of the executors of *John Wells*, to one-third of whose estate, after payment of debts and legacies, the plaintiff's intestate was entitled; that letters testamentary on the estate of the said *John Wells*, were granted to said *John Boyd Watkins*, and a certain *Philemon Sherwood*, on the 17th of June, 1803.   The plaintiff then, to prove his claim, read in evidence to the jury, the inventory returned by the executors aforesaid, on the 26th of July, 1803, and an account of sales dated the 16th of December, 1803, and shewing that assets, came to the hands of the executors to the amount of $5244 77 after deducting the specific bequests.   The plaintiff offered no evidence of any settlement by the executors in the Orphans' Court, and no proof that such settlements have not been made there by the executors.   The defendants objected, that said inventory and account of sales returned as aforesaid, and without shewing the settlements in the Orphans Court, could furnish no evidence of the amount of the distributive share to which the plaintiff's intestate was entitled, so as so charge therewith the security in the guardian's bond, and so prayed the Court to instruct the jury. The Court refused this prayer, being of opinion that the inventory and account of sales were *evidence of* themselves, unless settlements with the Orphans Court were produced of the amount of the distributive share of the plaintiff's intestate, and would entitle the plaintiff in this cause to recover one-third part thereof, unless the defendants entitle themselves by legal proof, to deductions from the amount thereof.   The defendants excepted.

4. The plaintiff having produced the inventory of the estate of *John Wells*, and account of sales, as stated in the former bills of exceptions, which it is agreed shall be taken as a part of this bill of exceptions, and having rested his

claim upon that evidence. The defendants proved that *Sarah,* the daughter, and one of the residuary legatees of *John Wells,* intermarried with *Philip Sherwood,* one of the executors, before the death of her father. That *John Boyd Watkins,* the other executor, was appointed by the Orphans Court, guardian to *John H. Wells,* another of the children, and residuary legatees of the said *John Wells.* They also proved that *Richard H. Wells,* the plaintiff's intestate, died a few years after his father, and while an infant. They further produced, and read in evidence to the jury, an account passed by the Orphans Court, the 10th day of December, 1817, and then gave in evidence to the jury the writ issued in this cause, on the 25th day of October, 1815; and they thereupon prayed the Court to instruct the jury, that if they should be of opinion from the evidence in the cause, that the daughter aforesaid of the said *John Wells,* married *Philemon Sherwood,* one of the executors of the said *Wells;* and that *John Boyd Watkins,* the other executor, was appointed guardian to *John H. Wells,* another of the children, and residuary legatees of the said *John Wells;* also that the said plaintiff's intestate died a very few years after the death of his father, and was an infant at the time of his death, and that the aforesaid settlement of the estate of the testator with the Orphans Court, took place on the 10th day of December, 1817, more than two years subsequently to the institution of this suit, then the plaintiff is not entitled to recover in this suit, a distributive share of the estate of the said *John Wells,* which, by the will of the said *John Wells,* was left to the plaintiff's intestate. The Court refused to give this instruction. The defendants excepted, and the verdict and judgment being against them, they brought the present writ of error.

The cause came on to be argued before BUCHANAN, Ch. J., and EARLE, STEPHEN and ARCHER, J.

*Magruder* and *Randall,* for the appellants, insisted,

1. That the proof contained in the third exception, would

have given to the appellee, an action against the executors, and their securities in the testamentary bond, but did not entitle the plaintiff to recover the "one-third part thereof," in an action against the security in the guardian's bond. 2. Upon the last exception they contended, that the proof gave to the plaintiff a clear action for the sum claimed against the executors, and their securities, but no right of action on the guardian's bond, the same being evidence that no settlement, and distribution of the estate of *John Wells*, had been made in the life-time of the appellee's intestate, and therefore his share of the estate was in the hands of the two executors, not in the hands of one of them only, and in his character of guardian.

On the *first* point they referred to *Barker vs. Parker*, 1 *Term Rep.* 287. *Pearsall vs. Summerset*, 4 *Taunt.* 592. *Leadley vs. Evans*, 9 *Ser. and Low.* 306. The act of 1798, *Ch.* 101, *Sub. Ch.* 11, *Sec.* 1. *Sub. Ch.* 12 *and* 5. *Drury vs. Conner*, 1 *Harr. and Gill*, 224. *Quynn vs. The State use of Pue*, 1 *Harr. and Johns.* 36. *Ellicott, et. al. vs. The Levy Court, Ib.* 359. *Wilson vs. Boyer, Ib.* 297. *State use of Key vs. Jordan*, 3 *Harr. and M'Hen.* 179. 2 *Harr. Entries*, 326. *Downes vs. State use of Tilden*, 3 *Harr. and Johns.* 239. *Seegars, Ex'r vs. State use of Betton*, 6 *Harr. and Johns.* 162. 1 *Root's Rep.* 51. *Stilwell vs. Mills*, 19 *Johns. Rep.* 304. *Wiser vs. Blachly*, 1 *Johns. Ch. Cas.* 607.

*Alexander* and *Flusser*, for the appellee, on the *first* point, cited, *Dukehart, Ex. vs. The State, &c.* 4 *Harr. and Johns.* 506. 2 *Philips Ev.* 296. 2 *Fonb.* 184. *Bishop vs. Chichester*, 2 *Bro. Ch. Cases*, 163. *State use Key vs. Jordan*, 3 *Harr. and M'Hen.* 179. *Seegars, Ex. vs. State use of Betton*, 6 *Harr. and Johns.* 162. The act of 1798, *Ch.* 101, *Sub. Ch.* 111, *sec.* 16. *State use of Chamberlaine's Ex. vs. Wright*, 4 *Harr. and Johns.* 148. *Frederick vs. Frederick*, 1 *P. Wms.* 710. *Lechmen vs. Earle of Carlisle*, 3 *Ib.* 215.

STEPHEN, J. delivered the opinion of the Court.

This action was instituted against *Nicholas Watkins*, of *Thomas*, the appellant's intestate, one of the sureties of *John Boyd Watkins*, now deceased, to recover from him, in his character of surety for said *Watkins*, as guardian to *Richard W. Wells*, the appellee's intestate, a certain sum of money, charged to be in the hands of *Watkins*, his principal, and for which it was charged he had not accounted according to law. This sum of money was claimed to be recovered by the appellee, as administrator of *Richard W. Wells*, one of the representatives of *John Wells*, deceased, who by his will appointed *John B. W.*, and *Philemon Sherwood*, his joint executors. It no where appears when *John Wells*, the testator, died; but it appears that letters testamentary on his estate were granted to the said *John B. W.*, and *Philemon S.*, on the 17th day of June, 1803. It was also proved, that *Richard W. W.* died a very few years after his father, and while an infant. An inventory of the estate was returned by the executors, on the 26th day of July, 1803, and an account of sales dated the 16th December, 1803, shewing that assets came to the hands of the said executors, to the amount of $5244 77, after deducting the specific bequests. No proof was offered of any settlement in the Orphans Court, prior to the institution of this suit, which was commenced on the 25th October, 1815. It does not appear by any proof in the cause, when *Philemon S.*, the co-executor of *Watkins*, died, the pleadings and the evidence being perfectly silent as to that fact. This suit being instituted on the guardian's bond, the question which this Court is called upon to determine is, whether, upon the above statement of facts, the administrator of the ward was entitled to recover? This Court are of opinion that where a sole executor sustains the two-fold character of executor and guardian, the law will adjudge the ward's proportion of the property then in his hands, to be in his hands in the capacity of guardian, after the time limited by law for the settlement of the estate, whether a

final account has been passed by the Orphans Court, or not; upon the principle, that what the law has enjoined upon him to do, shall be considered as done, and from that time he holds the ward's proportion of the property, by operation of law, in that character in which he would be entitled to receive it, upon a final completion of his trust as executor. But where, as in this case, there is a joint executorship, this construction of law cannot, consistently with principle, prevail; because his co-executor is entitled to the possession of the assets, equally with himself, and the property of his ward cannot be legally considered in his hands, until he has actually received it. As to the powers and rights of co-executors, see *Toller on Ex.* 359: "Co-executors, we may remember, (he observes) are regarded in law as an individual person; and by consequence, the acts of any one of them, in respect to the administration of the effects, are deemed to be the acts of all; for they have a joint and entire authority over the whole property. Hence a release of a debt by one of several executors, is valid, and shall bind the rest."

In this case, it is true *John B. W.* survived *Sherwood,* his co-executor, but it does not appear by the evidence in the cause, that his ward was then living, (which fact it was incumbent on the plaintiff to prove,) and if he was dead, his guardianship had expired, and he was no longer accountable in that character.

**JUDGMENT REVERSED.**