ESTATE OF EDWARD WIL-
LIAMS, DECEASED.        } MARCH TERM, 1847.

[TRUSTEE TO SELL BEING ALSO GUARDIAN, AS TO THE LIABILITY OF HIS SURETIES.]

WHEN a final account has been passed, or the time limited by law for the settlement up of an estate has elapsed, and the same person who is executor or administrator, is also guardian to the parties entitled to the surplus, the law will adjudge such surplus in his hands, in that character in which his duty requires he should hold it.

The transfer in such case is effected by operation of law, and requires no act of the party himself.

This principle does not apply to a trustee appointed under a decree of a Court of Chancery to sell property, where no *time* is fixed by law, for the completion of his trust.

3

[By a decree of this court passed on the 2nd of August, 1837, John S. Selby was appointed trustee to sell certain parcels of real estate, which had been devised by Edward Williams, deceased, to his widow, Editha Williams, for life, with remainder in fee to four of his grand-children. On the 5th of the same month he gave bond as such trustee, with Nicholas I. Watkins and Basil Shephard as his sureties, and on the 7th of September following, he sold the said property on the terms specified by the decree, viz. The interest on the purchase money to be paid annually, and the principal in five years from the day of sale. The tenant for life was duly paid the said interest, and from the 27th of May, 1842, to the 7th of September, the trustee received on account of the principal the sum of $2011, for which he did not account, and since that time he became utterly insolvent.

On the 8th of July, 1844, a petition was filed by the grand-children of the testator to obtain from said Selby an account of his proceedings as trustee, in reply to which, he stated, that he had received the sum above mentioned, with which, after making certain deductions, he had, with the consent of the parties interested, charged himself as guardian to two of said grand-children. As guardian to these children he had, on the 12th of June, 1837, given bond with Thomas Robinson and Harriet Selby for his sureties. And on the 10th of April, 1847, another petition was filed in this cause by Charles R. Stewart, administrator of Thomas Robinson, deceased, Harriet Selby, Nicholas I. Watkins and Basil Shephard, expressing a doubt as to which set of sureties, Selby should be held liable for his default, and praying the court, upon a view of all the circumstances of the case, to determine their respective rights and obligations. A commission to take testimony in reference to the matter of this petition was issued and returned; and there was also returned with the same a mortgage dated the 21st of October, 1843, executed by said Selby to Nicholas I. Watkins, one of the sureties on his bond as trustee, and James H. Watkins, who with the said Nicholas I. and the said Basil Shephard, had incurred certain responsibilities on his account;

against which, the mortgage was intended to indemnify them, and "also to save harmless and indemnify the said Nicholas I. Watkins and Basil Shephard as sureties on his trustee's bond hereinbefore mentioned."

Selby, whose testimony was taken under this commission, denied that he had ever charged himself as guardian with the money received by him from the purchasers of the estate of Williams; he stated that he had only intended doing this on certain terms, which he described, and which he said had not been complied with. To a cross interrogatory on the part of Stewart and Mrs. Selby, he replied that it was his impression, that when he executed the mortgage he did not know the exact sum due, but whatever money he had received as trustee, it was his intention, and the said Watkins' intention, to have secured by the said deed ; that he was not asked for the mortgage, but gave it of his own motion.

The case having been argued before the Chancellor, he delivered the following opinion, after first stating the facts :]

THE CHANCELLOR:

Upon this state of facts, I am called upon to decide, whether the burden of the loss resulting from the default of Selby shall be thrown upon the sureties in his bond as trustee, or guardian; or, in other words, whether the balance which is or ought to be in his hands, of the purchase money of the estate of Edward Williams, is to be considered in his hands as trustee under the decree of this court, or as guardian under the appointment of the Orphans Court ? Upon this question, the solicitors of the parties have been fully heard, and the facts and circumstances of the case deliberately considered.

The solicitors for the sureties in the bond given by Selby as trustee, seem to consider the case as coming within the principle decided by the Court of Appeals, in the case of *Watkins, administrator* vs. *The State, use of Shaw*, 2 *G. & J.*, 220, in which it was decided, that where a sole executor sustains the double character of executor and guardian, the law will adjudge the ward's proportion of the property in his hands, to be

in his hands in the capacity of guardian, after the time limited by law for the settlement of the estate, whether a final account has been passed by the Orphans Court or not, upon the principle, that what the law has enjoined upon him to do, shall be considered as done. The Chancellor is not able to perceive the analogy between that case and the one now under consideration. The law has limited a period within which an executor or administrator shall settle the estate, and when the same person is clothed with either of those offices, and is also guardian of the parties to whom the surplus, after paying the debts of the deceased belongs, it seems entirely proper, when the time for the final settlement of the estate has elapsed, that he should be regarded as holding such surplus in the character in which his duty requires he should hold it. The transfer in such a case from the executor or administrator to the guardian—he being the same individual—is effected by operation of law, and requires no act of the party himself. But the case of a trustee appointed under a decree of this court to sell property is entirely different. *No time* is fixed by law for the completion of his trust. His duty, and the condition of his bond require him to perform the trust reposed in him by the decree, or that may be reposed in him by any future decree or order in the premises ; but there is nothing in either which limits or defines the time within which the trust reposed in him must be completed. The Chancellor is not aware that the counsel undertook to state at what precise period this shifting of the property from Mr. Selby, trustee, to Mr. Selby, guardian, took place, and he thinks it would be extremely difficult to do so. His appointment as trustee took place in August, 1837, but the money in question was not received until 1842—five years afterwards— nor could it have been received earlier, unless the time of payment had been anticipated, as the credit on the principal proceeds of sale did not expire until the 7th of September of that year. Selby unquestionably received this money as trustee, and was to account for it as such. At what period did he cease to hold it in that character, and become responsible for it as guardian ?—is a question which seems to me not easily

solved.  It is said, that though the credit did not expire until 1842, and the payment of the money due by the purchasers could not of course have been compelled earlier, yet still the rights of the parties might have been settled sooner, and the amount due the wards ascertained.  But suppose this had been done, would the uncollected money due from the purchasers have been considered in the hands of Selby as guardian, until an order of court has passed authorizing him to receive it in that character ?  The Chancellor does not think so.

If, indeed, Selby had received this money, either after or before it was payable and had charged himself with it as guardian, it may be that upon the principle, that the court will sanction when done, that which upon application would have been ordered to be done, he would be regarded as holding it in that character.  But he did not so charge himself, and if we are to credit his deposition taken on the part of Watkins, he did not intend so to charge himself except upon terms which have never been complied with.  It seems to the Chancellor, that if the transmutation insisted upon by the counsel for the sureties in the trustee's bond, has been effected by operation of law, then it follows, that not only is the sum of $2011 in the hands of Selby as guardian, but the residue of the purchase money must be in his hand in the same character.

There is, however, another view of the case in which I am of opinion, the sureties in the bond given by Selby as trustee, must be held responsible, at least to the extent of a fair rateable proportion of the property mortgaged to them as an indemnity. Indisputably at the date of that mortgage—the 1st of October, 1843—which was after the receipt of the money by Selby, he and the mortgagees considered him as occupying the position of trustee with reference to this property, and liable for it as such. No such idea as a legal transfer from trustee to guardian was entertained then, but both mortgagor and mortgagees thought that the risk continued ; and for that risk the indemnity was provided.  The object of the deed, as the court thinks, was not merely to indemnify the sureties in the bond of the trustee, but to secure the payment of the money which he had received in

3*

that capacity; and this view of the object of the deed is confirmed by the evidence of the trustee himself, examined on the part of those sureties.

The Chancellor entertains a decided opinion, that the parties entitled to the proceeds of the estate of the deceased, would have a right to insist that the mortgaged property should be applied rateably to the payment of the debts to the bank, and the amount due by the trustee to the estate of Williams, and if so, that the sureties of the mortgagor in his bond as guardian—admitting that bond to be the responsible obligation—have the same right. Indeed, the counsel for the sureties in the trustee's bond were not understood to deny that the bank and the representatives of the deceased would have a right to insist upon the application of the mortgaged property, but they dispute the right of the sureties in the guardian's bond, for want of privity.

But if the devisees of Williams would have this right, then the mortgaged property must be regarded as a security held by them for the payment of their claim, and if so, it would seem to follow, that upon the payment of their claim by the sureties of their guardian, the latter would have a right to insist upon an assignment to them of those securities. *Cheesborough* vs. *Millard*, 1 *Johns. Ch. Rep.*, 130. The Chancellor will pass an order founded upon the views here presented ; and being also of opinion that Mrs. Williams is entitled for life to the interest upon the entire proceeds of the estate sold, will likewise pass an order to that effect.

[No appeal was taken from the order in this case.]