## Robert Lucas vs. Terrence Byrne.

*When an Administrator may sue in his Own name—Assignment of a Single bill by Simple Endorsement—Filling up a Blank endorsement at the Trial.*

Under letters of administration granted in the State of Virginia, the administrator became possessed among other effects of his intestate, a citizen of that State, of a bond or single bill executed by a citizen of Maryland, and endorsed in blank by the payee. The administrator charged himself, in his administration, with the amount of the bill and accounted therefor to his intestate's estate, which was insufficient to pay the debts of the deceased. The administrator instituted suit in Maryland against the obligor of the bill, and at bar assigned it to himself by writing over the blank endorsement. Held:

That such assignment gave the plaintiff the right to maintain the action in his own name against the defendant; and unless it could be shown that whilst the bill was in the possession of the deceased, the defendant settled it, or made an agreement whereby he was released from its payment, the plaintiff was entitled to recover.

A single bill may pass by simple endorsement, from one to another, to an indefinite extent, and the last holder, in order to collect it, if *bona fide* entitled thereto, may fill up the blank endorsement at bar, and recover on the same.

If the holder of a single bill should die, and the bill should thus come into the possession of his administrator, he may transfer it to any other party, if endorsed in blank, by simple delivery, and that party may have the blank filled up ; or the administrator may fill up the blank endorsement to himself individually, and may institute suit in his own name, if there be no *mala fides*. But his right to sue may be repelled by showing that according to the law governing his administration he had no right to the single bill, nor entitled to assign or collect it in his individual capacity.

APPEAL from the Circuit Court for Washington County.

This was an action instituted by the appellant on a single bill, dated 3d June, 1854, executed by the appellee and a certain Joseph Byrne, to Phillip Coons, administrator of Sarah

Tillett, deceased, for the sum of $795. Joseph Byrne did not appear and the suit was proceeded with against the appellee alone. The defendant pleaded as follows:

*First.* That he was not indebted as alleged. *Second.* Payment. *Third.* That the plaintiff was not the assignee of the single bill, *bona fide* entitled thereto. *Fourth.* That the plaintiff was not the assignee of the single bill as alleged. *Fifth.* That the single bill sued upon was executed by the defendant together with a certain Joseph Byrne to a certain Philip Coons, and that he in or about the month of July, 1854, by his blank endorsement on said single bill, endorsed and delivered said single bill to a certain Edward Lucas, and thence afterward the said Edward became the holder and owner of said single bill, and so continued to be the holder and owner thereof until his death, which took place in the year 1858, and that said single bill remained in the possession of the said Edward as the holder and owner thereof, as aforesaid, and that the same remained endorsed in blank as aforesaid to the death of the said Edward as aforesaid, and that said single bill then passed into the hands of the plaintiff, as administrator of the said Edward Lucas, deceased, who died intestate, and that the plaintiff, from thence on, held the said single bill as administrator as aforesaid, and in no other right, and as of the assets of the said Edward, deceased, and that it so remains in his hands as administrator, as aforesaid, and still endorsed in blank as aforesaid, up to the time of filing this plea, and that said Philip Coons never did endorse or deliver said single bill to the plaintiff.

The plaintiff joined issue on the first, second, third and fourth pleas of the defendant, and replied to his fifth plea as follows:

*Firstly.* That the said Philip Coons never did by an assignment in writing, transfer the said bill to the said Edward Lucas in the lifetime of the said Edward. *Secondly.* That the said Edward Lucas, before and at the time of his death, was domiciled in the State of Virginia, and that letters of

administration were never granted by the Courts of the State of Maryland, on the estate of the said Edward Lucas to the plaintiff, but that letters of administration were granted to the plaintiff in the State of West Virginia upon the estate aforesaid, and that before and at the time of the institution of this action, the plaintiff had fully administered the estate of the said intestate, and paid off all the debts due and owing by it, and among others had paid as security for the said intestate the sum of $2,000, over and above the assets which had or ought to have come into his hands as administrator, and that in his inventory of the assets of the intestate, the plaintiff had charged himself with the amount of the said single bill, and had fully accounted therefor in his said administration.

On the first replication to the fifth plea, issue was joined, and to the second replication, the defendant demurred.

*First Exception:* The plaintiff, to maintain the issue on his part joined, gave in evidence the single bill on which this action was brought, endorsed in blank by Philip Coons, with the following assignment written above the blank endorsement: " For value received I hereby assign and transfer the within note or single bill to Robert Lucas ; " this assignment having been written at 'the bar, and after the pleadings were made up and the issues joined. Here the plaintiff rested his case. Thereupon the defendant called the plaintiff himself as a witness, and offered to prove by him, that he was the administrator of Edward Lucas, who lived and died in West Virginia, in 1858, and that the plaintiff was the administrator of the said Edward, in West Virginia, and not elsewhere; and further offered to prove by the same witness, that the single bill sued upon in this case was the property of the said Edward Lucas at the time of his death, and that it came into the plaintiff's hands as administrator of the said Edward, with the name of the said Philip Coons endorsed in blank on the back of it, and that he held it as such administrator. To all of which evidence as offered for the purpose of showing

that the plaintiff had no right to institute or maintain this action, the plaintiff objected, but the Court overruled the objection, and admitted the evidence. The plaintiff excepted.

*Second Exception.*—The plaintiff, on cross-examination, proved by himself that he made an inventory of all the claims appearing to be due and payable to his intestate, including the single bill sued on in this case, and charged. himself therewith, and accounted for the same to his intestate's estate, and also that the personal estate of the intestate did not hold out, but was insufficient to pay the debts of the intestate; and then offered to prove that he advanced and paid out of his own private funds and moneys the debts due and owing by the intestate at the time of his death, after the exhaustion of the personal estate, to the amount of $2,000 and more, and that he was security for his brother, the said Edward, in his lifetime, and as such paid off the debt to the amount thereof, and proposed to show that after accounting for this single bill and other assets of the deceased, the deficiency in the personal estate paid by the plaintiff as aforesaid, was much greater than the amount of this bill, with interest thereon, for the purpose of showing that the plaintiff was rightfully and *bona-fide* the holder of the said single bill, and had the right to fill up the assignment to himself and maintain the action in his own name in this Court.

But the defendant objected to the testimony so offered, and the Court sustained the objection, and ruled that the evidence so proffered was not admissible; to this ruling the plaintiff excepted.

*Third Exception:* The defendant proved by John C. Unseld, a competent witness, that during the lifetime of the said Edward Lucas, and after the single bill sued on in this case went into his possession, and whilst he still held it, in the spring of the year 1855, the said Edward Lucas told him that the consideration of the bond was a negro woman purchased by the defendant, and that he had taken the woman off the hands of Byrne, and that he had settled with Coons for

the bond, and showed that the said Edward had come into possession of the bond *bona fide* and for a valuable consideration, but that afterwards, and whilst the bond and the negro woman were both in the possession of Lucas, he, the said Edward, declared to the witness that he would hold the bond until the decision of a suit then depending in Jefferson county, Virginia, his residence, against him in reference to the negro woman; that the suit was instituted and maintained by T. and H. Strider, and if they succeeded in their action against him, and took the negro away from him, he would then sue Byrne on this bond, but if he succeeded and retained the negro, then he would give back his bond to the defendant, and also proved by the production of the record of the proceedings of a case in the Superior Circuit Court for Jefferson county that on the 28th day of October, 1854, T. Strider and H. Strider instituted an action of detinue against the said Edward Lucas in his lifetime for the said negro woman, a slave, and that the case was proceeded with until after the death of the said Edward in 1858, when it was continued against the plaintiff as his administrator, and that on the 23d day of October, 1860, the said Court rendered judgment in the said cause against the plaintiffs in the said suit and in favor of the said Robert Lucas as administrator of the said Edward, deceased, and also proved by the said Unseld, that the said Edward Lucas held possession of the said negro woman until his death, and that she was doing service for him from the time he obtained possession of her until his death in 1858.

Thereupon the plaintiff offered evidence by himself tending to prove that the said Edward Lucas held the said woman as hired from the said Byrne, and proved also that upon the death of the said Edward Lucas the said defendant Byrne, called on the plaintiff in Virginia and demanded of him the said negro woman and her offspring as his own property, but that the administrator declined to deliver them to the defendant until after the determination of the suit then still pending

against him by the Messrs. Strider, which was the same suit that they had commenced against the said Edward in his lifetime; and also a letter of the 5th of March, 1856, from the defendant to the said Edward, giving directions to him in reference to the death of one of the offspring of the said negro woman, and stating that he, Byrne, would pay the necessary funeral expenses of the said negro; and also proved by a competent witness that the action at law against the said Edward Lucas by the Messrs. Strider did not necessarily involve a consideration or inquiry into the title of the said Edward Lucas, but only into his right of possession as against the plaintiffs therein.

Upon the whole of the foregoing evidence the plaintiff offered four prayers, the second of which was granted, the third was omitted from the record, and the following were rejected:

1. That the evidence of John C. Unseld, and the proceedings in the Superior Circuit Court of Jefferson county, Virginia, are not admissible in this cause, under the issues as framed.

4. That if the jury find from the evidence that the defendant executed the bond or single bill sued on in this cause, and that Philip Coons, the payee therein named, endorsed his name on said bond or single bill, and that in such condition it passed into the possession of Edward Lucas, who resided in Virginia; and that after the death of the said Edward, the said bond so endorsed in blank, came into the hands of the plaintiff as his administrator, and that the plaintiff was appointed administrator only in the State of Virginia, and by virtue only of the laws of that State; and that afterwards, for the purpose of recovering the money due and payable thereon, he instituted the action in this case against the defendant, who is a resident of this State, and that the assignment to him was made at bar by writing it above the name of Coons, the payee; such assignment, so written, gives the plaintiff a right to maintain in his own name this

action against the defendant; and unless the jury find that whilst the bond was in the possession of Edward Lucas, and held by him, the defendant settled it, or made an agreement, whereby he was released from the payment of the bond, the plaintiff is entitled to recover.

To the refusal to grant his first and fourth prayers, the plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*Henry Kyd Douglas* and *Attorney General Syester*, for the appellant.

*William T. Hamilton*, for the appellee.

STEWART, J., delivered the opinion of the Court.

The chief question involved, as we understand from the record of proceedings in the Circuit Court, and the briefs and arguments of the respective counsel, is simply this:

Can the plaintiff in a Court of this State by filling up the blank endorsement at bar, assigning the single bill to himself, institute suit in his own name and recover upon the single bill given by the defendant to Philip Coons, and by him endorsed in blank, and delivered to Edward Lucas, who held it at the time of his death in the State of Virginia, and upon whose estate Robert Lucas, the plaintiff, administered in that State, and as administrator of Edward Lucas, became possessed of the bill?

According to the provisions of the 9th Article of the Code, and the general law applicable to the subject, the plaintiff, under such circumstances, is the equitable assignee of the bill, and entitled to sue and recover upon it, unless there be proof of *mala fides* on his part; or that he is not the *bona fide* holder of it. Upon the question of his *bona fide* right to the

paper, if it be proved that the purpose was to collect it, as assets of Edward Lucas, to be administered, that would shew that the plaintiff was not the *bona fide* holder of it, and would be a fraud upon the law and would prevent his recovery.

If, on the contrary, as administrator of Edward Lucas, in the State of Virginia, he has in virtue of his administration reduced the property of the deceased into his own possession, so that he has acquired the legal title thereto, according to the laws of that State, he can maintain a suit here in his own name and right, without taking out new letters of administration. He has become the legal owner thereof. If the plaintiff as administrator of Edward Lucas has charged himself with the single bill in question, and so administered the estate, that will give him the right thereto, if in contravention of no law of Virginia, and he is entitled to sue here in his own name if he can conform to the provisions of our laws, by having a proper assignment authorizing him to do so. If authority be needed for such a plain proposition, in regard to the rights of parties to bring suits in our Courts, reference may be had to *Story's Conflict of Laws, sec.* 516.

In *Kent vs. Somerville,* 7 *G. & J.,* 271, Ch. J. BUCHANAN says, "a bequest by the obligee of a single bill, is an inchoate transfer of the bill in writing, by a person authorized to make it, and when assented to by the executor is made perfect, and vests at law in the legatee the *bona fide* title. Such a bequest therefore is such an assignment in writing as is sufficient to gratify the act and gives to the legatee the right to sue in his own name."

Such is the liberal construction of our law, now found in the 9th Article of the Code, which authorizes the assignee of any *chose in action, bona fide* entitled thereto, by assignment in writing by the person authorized to make the assignment, to sue in his own name, whilst the defendant is fully protected by allowing him under the 3d section, the same defence as he had against the assignor, at the time of the assignment and before notice thereof.

In the case of *McNulty vs. Cooper*, 3 *G. & J.*, 218, this Court has said, that the blank endorsement and delivery of a bond by the obligee, invests the holder with the right of suing in the name of the assignor for the money due on the bond, and of appropriating the same to his own use, and is *prima facie* evidence of title to the bond in the assignee.

In *Kent vs. Somerville*, 7 *Gill & John.*, 265, the Court also say, "the words 'any assignee' embrace any assignment, immediate or remote."

*Chesley vs. Taylor*, 3 *Gill*, 255, decides, that the blank endorsement and delivery of the bill, constituted the party to whom it was delivered the absolute owner of the bill, and conferred upon the holder the power to fill up the blank with a full assignment of the interest to himself—that this can be done at the trial, and is to be regarded for the purposes of the suit, as having been made when the instrument was endorsed —that this supports his declaration that the instrument had been endorsed to him before the suit—that the rights of the holder of a bond or single bill, delivered and endorsed in blank, are in this respect similar to those of the holder and endorser of a promissory note, giving him the power to make a complete assignment.

It is well settled in regard to negotiable paper, governed by the law merchant, that the administrator may transfer any negotiable security by his endorsement thereof. *Story's Conf. of Laws*, sec. 359; *Rand vs. Hubbard*, 4 *Met.*, 252; *Barrett vs. Barrett*, 8 *Greenleaf*, 353; *Robinson & Carson vs. Crandall & Vincent*, 9 *Wendell*, 425. The case of *Stearns vs. Burnham*, 5 *Greenleaf*, 261, relied upon by the appellee, seems to be exceptional, and was not followed in *Barrett vs. Barrett*, 8 *Greenleaf*, 353.

The single bill may pass from one to another to an indefinite extent, and the last holder, in order to collect it if *bona fide* entitled thereto, may fill up the blank endorsement at bar, and recover on the same.

If the holder should die, and thus the bill be in the possession of his administrator, he may transfer it to any other

party if endorsed in blank by simple delivery, and that party may have the blank filled up; or the administrator may fill up the blank endorsement to himself individually, and there is nothing to prevent him, in his individual capacity, from instituting suit thereon, in his own name, where there is no *mala fides.*

If the question be raised as to the *bona fides* of his right, the mere fact of his being administrator affords no presumption that he is not entitled to the debt; on the contrary, he is the *prima facie* rightful holder of the instrument, but his right may be repelled by shewing that according to the law governing his administration he has no right to it, nor entitled to assign or collect it, in his individual capacity. In the absence of such proof, the mere fact of the endorsement in blank and the filling up the assignment to him, is sufficient to give him the *prima facie* right to it; and *a fortiori* proof of his having charged himself with the debt, in his administration, would be confirmatory evidence of his claim.

If the administrator has the right to assign the bill to another, who can bring suit on it here, without administration, because it is no longer assets to be administered, but a debt properly owing to the assignee; it follows that where the administrator becomes possessed of it, and has made it his own by charging himself with it in his administration, he has the right to collect it, in his individual capacity, where it has been assigned to him, unless there be some law governing his administration preventing such transfer.

In either case where it ceases to be assets unadministered, and does not belong to the deceased but to another party, such party has the right to sue and recover for it in his individual capacity.

Whilst it is well settled that the administrator cannot in his representative capacity collect the debt, because his letters of administration granted in Virginia, can give him no authority to administer assets belonging to the administration here, *Storm vs. Smith,* 2 *G. & J.,* 493; *Kropt vs. Wickes,* 4 *G. & J.,*

333–340; *Morrell vs. Dicky*, 1 *John. Ch. Rep.*, 153, yet, when the claim by rightful assignment has become transferred in good faith to another, or to the administrator in his private capacity, there is no rule restricting the right of recovery here, as our law authorizes the equitable assignee without qualification to sue in our Courts, where the obligor resides within our jurisdiction. This was the view entertained by the Supreme Court in an analogous case. *Harper vs. Butler*, 2 *Peters*, 241; see also *Story's Conf. of Laws, sec.* 516; *Talmadge, Adm'r, vs. Chapel*, 16 *Mass.*, 71.

Our statute, authorizing the assignee to bring suit in his own name, has no narrow and technical rule of construction to be applied to it; but is to be liberally expounded to carry out its purposes.

The third section, allowing all legal or equitable defences as could be had against the assignee, and the whole scope of the Act abundantly shew that its object was to extend the right of action, and free it from technical niceties, and at the same time preserve unimpaired the rights of the debtor.

The assignee must be able to shew that he is *bona fide* entitled to the bill; and where there has been an assignment as described, he is entitled *prima facie* to collect it, subject, however, if the issue be made, to have such presumption rebutted by shewing *mala fides* on his part, or that he was not in truth entitled to it. The plaintiff was entitled to recover, unless it could be shewn that he was not entitled to the bill sued on; or the defendant could shew that he had a meritorious defence against its recovery.

The evidence offered in the first exception by the defendant, for the purpose of shewing that the plaintiff had no right to maintain the action in his individual capacity, because he was the administrator of Edward Lucas, ought not to have been admitted simply for that purpose.

If introduced as a part of the defence to shew that the plaintiff was not the *bona fide* holder of the bill, it was admissible for such purpose.

The testimony proposed by the plaintiff in the second exception, would have been admissible as counter-evidence in that case.

The evidence offered by the defendant in the third exception, was not admissible to affect the consideration of the bill, as the consideration or failure of consideration cannot be proved in an action upon it at law, *Key vs. Knott and Wife,* 9 *G. & J.,* 360, but as evidence of payment, if that could be made out, it might have been admissible upon the issue of payment. This explains our view as to the first prayer of the plaintiff which was rejected.

We find no fault with the fourth prayer of the plaintiff for the reasons we have stated, and think it ought to have been granted.

*Judgment reversed and*
*new trial ordered.*

(Decided 20th March, 1872.)