(Decided 1st April, 1880.)

THE CITIZENS' NATIONAL BANK OF BALTIMORE *vs.* GEORGE M. SHARP, Adm'r c. t. a. of FRANCES P. LANCASTER.

*Voluntary Payment by a Debtor in this State to the Foreign Executor of the Creditor, before Administration was granted in this State—Tax on Commissions of an Administrator—Transfer by operation of Law—Construction of a Will—Collateral Inheritance Tax.*

A voluntary payment by a debtor in this State to the executor or administrator of his creditor appointed in another State in which the creditor had his domicile at the time of his death, is valid, and a good discharge of the debt, where such payment has been made

Citizens' Nat. Bk. *vs.* Sharp, Adm'r.

before any administration has been granted in Maryland, and such payment is a bar to the claim of the domestic administrator afterwards appointed; nor does the validity of such payment depend in any manner upon the fact of the non-existence of debts against the deceased in this State.

There could be no tax in the State on the commissions of an administrator here as to the fund paid to the foreign executor, appointed after such payment.

Where, according to the laws of Indiana, the time limited for the administration of an estate by an executor in that State had elapsed before money was paid him by a debtor, in Maryland, of his intestate, but he had not passed an administration account, and was still acting in his capacity of executor and not of trustee, which he also was under the will, it was HELD :

That the doctrine of mutation of title by operation of law did not apply ; and that the money was paid to him as executor and not as trustee.

By the will of F. P. L., admitted to probate in 1876, in the office of the Clerk of the Circuit Court for Wayne Co., Indiana, an amount of stock of a bank in Baltimore City, Md., was bequeathed to her husband, I. L., (executor of her will,) sufficient to pay semi-annually the sum mentioned in the following contract : (dated in 1872, and signed and sealed by the parties named therein.) "We, the undersigned, I. L. and F. P. L., his wife, and F. W. P. and E. B. P., his wife, do hereby covenant and agree, to and with each other, for ourselves, our heirs, executors, administrators and assigns, in the manner following, to wit: for the purpose of more fully securing the support of their aunt, J. P., they agree to pay the sum of six hundred and fifty dollars annually, to the person or persons with whom the said J. P. may be residing during her life, the said sum to be used to pay the expenses of the said J. P.; provided, that if at any time the said J. P. should by any means become possessed of a greater amount of income than she now has, then the parties to this covenant shall be released from the payment of such part of the above stated amount, as shall be equal to the amount of income, which the said J. P. shall have further acquired. And it is further agreed between the parties, that whatever sum shall be paid by the above parties in gross, that I. L. and F. P. L., his wife, shall pay one-half of said sum, and that F. W. P. and E. B. P., his wife, shall pay the other half of said sum." P. and wife resided in Maryland. The value of one-half of the stock was voluntarily

paid by the bank to I. L. in Indiana, before administration was granted in Maryland. HELD :

1st. That the money secured by the agreement did not constitute a debt against her estate.

2nd. That no collateral inheritance tax thereon was payable in Maryland.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*Edward H. Gans* and *R. D. Morrison,* for the appellant.

*George M. Sharp* and *Edward Otis Hinkley,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This is an action of *assumpsit* brought by the appellee to recover money payable by the appellant in redemption of 167 *shares* of its capital stock held by Mrs. Lancaster at the time of her death. The case was tried before the Superior Court, without a jury ; all errors of pleading were waived. An agreed statement of facts was signed by counsel, substantially as follows: Mrs. Lancaster owned 333 shares of the capital stock of the appellant. She died in Indiana, having her domicil in that State at the time of her death.

She left a will, by which she appointed her husband Israel Lancaster, her executor, who qualified in due form in Indiana on the 29th day of May, 1876, being at that time a resident of that State, and received letters testamentary in Richmond, Wayne County, Indiana, but never received letters testamentary in Maryland.

The Bank, before September 1st, 1877, voted to redeem one-half of its capital stock, which included 167 *shares* of the stock owned by Mrs. Lancaster, at the par value of $10 per share.

On September 5th, 1877, Israel Lancaster was removed as executor, by the proper Court in Indiana, and *William H. Bradbury* was appointed administrator d. b. n. c. t. a.; qualified in due form of law, and received letters of administration, September 8th, 1877. On September 24th, 1877, *George M. Sharp*, the appellee, was appointed administrator c. t. a. of Mrs. Lancaster in Maryland by the Orphans' Court of Baltimore City, received letters of administration, gave bond and was duly qualified. On September 1st, 1877, before the issuing of letters of administration in Maryland, the Bank, *on the order of Israel Lancaster, Executor*, sent the money paid in redemption of said shares to the First National Bank, of Richmond, Indiana. The appellant had at or before the date of said order, a copy of the will, and had also notice, before the order and payment thereof, that there was some trouble with the executor, *Lancaster*.

The Bank at Richmond, Indiana, placed the money to the credit of Israel Lancaster, executor. Immediately after the grant of letters to the appellee, he demanded the money, payable in redemption of the shares aforesaid, (at the same time exhibiting his letters of administration to the proper officers of the appellant), who refused to pay the money, alleging that they had already paid it to the executor under the will. The appellant immediately notified the Bank in Richmond, Indiana, not to pay the money to Bradbury, administrator; afterwards Bradbury instituted suit against the Bank in Richmond, in the Circuit Court for Wayne County, Indiana, (a Court of competent jurisdiction), for the recovery of the money, which suit was defended at the cost of the appellant; judgment therein was given in favor of Bradbury, adminis-

trator, and the money has been paid in satisfaction of the judgment.

It was further agreed that the Maryland administrator has received from a debtor in this State $411, and has paid one debt, in amount $4. That the estate owes for taxes, to the State of Maryland and the City of Baltimore, $118. The Maryland administrator has funds to pay these, but this does not include the tax on executors' commissions, or the collateral inheritance tax (if any is payable) on the sum claimed by the appellee in this case, or upon 166 shares of the stock of the appellant. The appellee does not know of any other debts against the estate in Maryland, unless the agreement referred to in Mrs. Lancaster's will is a debt. No debts have been presented or proven against the estate in Indiana, and neither the administrator there nor here knows of any other debts. It was further admitted that the Maryland administrator has funds sufficient to pay the above debts, and also the collateral inheritance tax.

The dividends on the 333 shares of stock due in January and July, 1877, were paid by the appellant to F. A. Plummer, who collected the same on the orders of Israel Lancaster, executor. Francis W. Plummer and Elizabeth, his wife, parties to the contract mentioned in the will, to which contract the testatrix and her husband were also parties, lived in Maryland till the death of Mrs. Plummer, and F. W. Plummer still lives in this State.

The will of Mrs. Lancaster bequeaths to her husband, Israel Lancaster, (who is made sole executor), an amount of Citizens' Bank stock in Baltimore, sufficient to pay semi-annually the sum mentioned in the contract signed by the testatrix and her sister, for the support of Joanna Plummer during her life, and at her death the principal to form part of the estate of testatrix.

All the rest of her estate, in whatever manner invested, is bequeathed to her husband, to be held in trust by him

during his life, for the mutual benefit of himself and children. The principal to remain undivided during that time. Power is given to the executor to sell her real estate, and at his death the property to be divided among her children, a certain portion thereof mentioned in the will is given to H. A. S. Wright.

The contract referred to in the will is as follows :

" We, the undersigned, Israel Lancaster and Frances P. Lancaster, his wife, and F. W. Plummer and Elizabeth B. Plummer, his wife, do covenant and agree, to and with each other, for ourselves, our heirs, executors, administrators and assigns, in the manner following, to wit: for the purpose of more fully securing the support of their aunt, Joanna Plummer, they agree to pay the sum of six hundred and fifty dollars annually, to the person or persons with whom the said Joanna Plummer may be residing during her life, the said sum to be used to pay the expenses of the said Joanna Plummer, provided that if at any time the said Joanna Plummer should by any means become possessed of a greater amount of income than she now has, then the parties to this covenant shall be released from the payment of such part of the above stated amount as shall be equal to the amount of income which the said Joanna Plummer shall have further acquired. And it is further agreed between the parties, that whatever sum shall be paid by the above parties in gross, that Israel Lancaster and Frances P. Lancaster, his wife, shall pay one-half of said sum, and that Francis W. Plummer and Elizabeth B. Plummer, his wife, shall pay the other half of said sum." (Signed and sealed by the four parties named, and dated April 22nd, 1872.)

Proof was offered tending to show that before the money was paid on the order of Lancaster, the executor, Mr. F. W. Plummer informed Mr. Guest, the President of the appellant, that there was some claim on the funds in its hands, and that there might be an administration in Maryland.

On the foregoing statement of facts the appellee offered a prayer, asserting the proposition that the payment made by the appellant upon the order of Lancaster, the executor, was no bar to the recovery of the same fund by the appellee; provided the Court find as a fact that the appellant had a copy of Mrs. Lancaster's will in its possession before making said payment, and had notice that there was some trouble with the executor, Lancaster, and had notice that there was some claim by a resident of Maryland on the estate of the testatrix, and further finds that there was such a claim.

The appellant offered two prayers. The *first* asserted, upon the facts stated, that the payment was made to Lancaster, as *trustee,* and not as executor, and that the appellee was not entitled to recover; and the *second* asked the Court to declare that the payment to the National Bank of Richmond, Indiana, under the circumstances mentioned in the agreed statement of facts, was a good and valid payment of the appellant's debt to Mrs. Lancaster's estate, and a bar to the claim of the appellee in this case.

The Superior Court sustained the prayer of the appellee, and overruled those of the appellant, and gave judgment accordingly; from this judgment the present appeal has been taken.

By the will of Mrs. Lancaster her property was devised to her husband, Israel Lancaster, in trust, and he was constituted the sole executor. It appears from the Revised Statutes of Indiana, which by agreement are made evidence in the case, that the time limited by law for the administration of the estate had elapsed before the money was paid; and hence it is argued that it was received by Israel Lancaster in his character as trustee, and not as executor, the estate having then by operation of law, vested in him as trustee, according to the principles decided in 3 *H. & McH.,* 179; 3 *H. & J.,* 201; 6 *H. &. J.,* 162; 2 *G. & J.,* 220; 5 *Gill,* 60; 12 *Md.,* 418, and in *State, use of Gable vs. Cheston and Carey,* 51 *Md.,* 352.

It does not appear, however, that any administration account had been passed by the executor; and moreover, that he was still acting in his capacity as executor, and in that character drew the order, and further that eventually the money was decided by the Indiana Court to be payable to the administrator *d. b. n. c. t. a.* We must hold, therefore, that the doctrine of mutation of title, by operation of law, does not apply, and consequently that the money was paid to Lancaster, as executor, and not as trustee.

We do not consider it material to consider the distinction between the rights of a foreign executor and a foreign administrator. This distinction is recognized in *Rand vs. Hubbard,* 4 *Metcalf,* 256, and in *Winchester vs. Union Bank,* 2 *G. & J.,* 80. An administrator, it is said, derives his title and authority entirely from the letters of administration, while an executor derives his title from the will, and his letters testamentary are merely the due and proper authentication of his office. See also *Story, C. of L., sec.* 465; 1 *Wms. Ex'rs,* 255, 256.

So far as respects the right to institute suits, or to administer assets outside of the State or country in which the probate of the will has been made, and the letters granted an executor and administrator stand on the same footing, and have no power "to maintain suits for the collection of assets in his official capacity, in any other State or country, except that from which he derives his authority to act in virtue of the probate and letters of administration there granted." *Story, C. of L., sec.* 513. And such is the well settled doctrine in this State. *Glenn vs. Smith,* 2 *G. & J.,* 493; *Kropt vs. Wickes,* 4 *G. & J.,* 333, 340; *Lucas vs. Byrne,* 35 *Md.,* 494; *Barton vs. Harrison,* 41 *Md.,* 546.

The question, however, presented by this case is, what is the effect of a voluntary payment by a debtor in this State to the executor or administrator of his creditor, ap-

pointed in another State in which the creditor had his domicil at the time of his death, where such payment has been made before any administration has been granted in Maryland; and is such payment a bar to the claim of the domestic administrator afterwards appointed?

This question has never been distinctly decided in this Court, but it has arisen in several of the other States, and in the Supreme Court of the United States, and the general current of the decisions has held that such voluntary payment is valid, and a good discharge of the debt. This opinion was expressed by Chancellor KENT in *Williams vs. Storrs*, 6 *Johns. Ch.* 353, 357, and *Doolittle vs. Lewis*, 7 *Johns. Ch.* 46, 48. It was so decided by the Supreme Court of Massachusetts in *Rand vs. Hubbard*, 4 *Metcalf*, 255, and *Hutchins vs. State Bank*, 12 *Metcalf*, 421; and in New York in *Parsons vs. Lyman*, 20 *N. Y.*, 112, where the subject is fully considered in an elaborate opinion by DENIO, J. By the Supreme Court of the United States it has been recognized as well established. *Mackey vs. Coxe*, 18 *How.*, 104, and *Wilkens vs. Ellett*, 9 *Wal.*, 740. In the case last cited the identical question arose. The Court referred to the doubts expressed by Judge STORY in his work on the *Conflict of Laws*, secs. 514, 515, and say, "with the exception of the case in Tennessee, (*Young vs. O'Neal*, 3 *Sneed*, 55,) none have been referred to, nor have our own researches found any maintaining the invalidity of the payment."

We need not repeat here the reasoning upon which these decisions are based, it is fully stated by SHAW, C. J., in 4 *Metcalf;* DEWEY, J., in 12 *Metcalf*, and DENIO, J., in 20 *N. Y.*, and NELSON, J., in 9 *Wallace*, before cited, and is in our opinion entirely satisfactory and conclusive.

In *Vaughn vs. Barrett*, 5 *Vermont*, 333, cited by the appellee, letters of administration had been granted in Vermont before the money was paid to the New York executor. In such case it was properly held that the

payment was not a discharge of the debt as against the claim of the domestic administrator.

In this case the payment was made before there was any administration in Maryland, and was in our opinion a valid discharge of the debt.

The validity of the payment does not in our opinion depend in any manner upon the fact of the non-existence of debts against the deceased in this State.

As said in *Wilkens vs. Ellett,* the "original administrator or executor with letters taken out at the place of the domicil, is invested with the title to all the personal property of the deceased for the purpose of collecting the effects of the estate, paying the debts and making distribution of the residue, according to the law of the place, or directions of the will as the case may be. It is true if any portion of the estate is situated in another country, he cannot recover possession by suit without taking out letters of administration from the proper tribunal in that country, as the original letters can confer upon him no extra-territorial authority.

"The difficulty does not lie in any defect of title to the possession, but in a limitation, or qualification of the general principles in respect to personal property by the comity of nations, founded upon the policy of the foreign country to protect the interests of its home creditors.

"* *. * * * * It is upon this qualification of the law of comity, and consequent inability of the original administrator to sue in a foreign country upon which the objection is founded to the validity of the voluntary payment by the foreign debtor to him.

"There is doubtless some plausibility in it growing out of the interest of home creditors. But it has not been regarded of sufficient weight to carry with it the judicial mind of the country."

But if the question of the existence of debts in Maryland were important, it does not appear that there are

any debts here to pay for which the funds in dispute are required.

1st. The money secured by the agreement referred to in Mrs. Lancaster's will does not constitute a debt against her estate.

2nd. There is no tax on commissions of the administrator in this State with respect to the fund here in dispute. Such a tax is payable only in case of the administration of the same in this State; but as it had been paid to the foreign executor before letters were granted to the appellee, he is not entitled to commissions thereon. *Act of* 1874, *ch.* 483, *sec.* 103.

3rd. No collateral inheritance tax thereon is payable in this State.

It appears from the statement of facts that the appellee has sufficient funds in hand to pay all the debts of the testatrix, and all charges on her estate in Maryland.

The judgment of the Superior Court will be reversed.

*Judgment reversed.*

(Decided 1st April, 1880.)