Mr. Justice Wylie
delivered the opinion of the court.
John Lang, by his will, bequeathed one-third of his property to his widow and the residue to his two sons, and appointed Philip May, one of the defendants, executor, who duly qualified, and letters testamentary were issued to him on the 20th of November, 1869. The defendant, Peter May, was one of his sureties. Among the assets of the estate was the note of Nicholas May, dated February 21, 1867, for $1,200, payable, to the order of John Lang, five years after date, with interest at six per cent, and secured by deed of trust upon real estate. The note was good and collectable on maturity, and came into the hands of Philip May, the *7 executor. The suit is based upon the supposed right of the plaintiff to recover by reason of the failure of the executor to collect the amount due on this note, two-thirds of which the plaintiffs claim. On the same day that May secured his letters testamentary he also qualified as guardian for the plaintiffs, who were then about the respective ages of thirteen and three years.
In his first and final account as executor, he charges himself with interest collected on this twelve hundred dollar note, blit neither charges himself with the note as executor or guardian. In January, 1812, in contemplation of a visit to Europe, he filed a petition praying to be relieved of his duties as guardian, and, on the same day, an order was passed revoking the certificate of guardianship. That order recites that the guardian had turned over to the custody of the court the balance of the funds due to his wards, among which was this note for twelve hundred dollars.
As executor, this note was never embraced in his inventory, but, when he came to settle his final account as executor, he charged himself with certain interest upon the note. The-settlement of that account showed that all the debts were paid, and that this note was in his hands at the time. But whether in his hands as executor or as guardian depends upon circumstances. *
The authorities in Maryland upon this subject are very decisive. It is settled there that from the time the executor who is also guardian has no further use for assets as executor he will be treated as holding them in his capacity of guardian whether he has settled his account or not. Watkins vs. Wells, 2 G. & J., 220; State vs. Jordan, 3 H. & McH., 180; Kirby vs. State, 51 Md., 392; State vs. Chester, 51 Md., 376, and Bank vs. Sharp, 53 Md., 527.
Having, therefore, no further use as executor for this note, in construction of law, he must he considered as having held the note as guardian.
But it is said that he did no act to transfer it; that he did not indorse it from himself as ■ executor to himself as guardian. That is very true, but the indorsement is not neces *8 sary in a case of that kind. An executor sues in his capacity as executor for any debts due the estate by virtue of the authority conferred upon him by the law, and so it is as guardian. If the guardian is entitled to the property under a certain sense of it the law gives him the authority to sue. He derives his authority from the law, and not from any transfer from himself as executor to himself as guardian.
The law conferring the authority upon him, then, as guardian to bring suit for whatever is collectable, for whatever assets belong to him in that capacity, there is no form required to effect a transfer of assets from himself as executor to himself as guardian. The law effects the transfer and gives him the power in any proper case to bring suit.
It is true also the executor is a trustee for the legatees. The debts having been discharged he held this note as trustee for these two children. What results from that? He held the note in the first instance as executor, but then it was in trust for himself representing the children as guardian, and when he took this note along with the other assets into the court, that was a formal announcement that he held the note or claimed to hold the note as guardian for the children.
He was anxious to get away. He was discharged already as executor when he closed his personal final account. What was he to do with this note? It was not due yet. He held two-thirds of it for these minors, and the other one-third for the widow. Well, he did as any trustee has always a right to do; it is always the privilege of a trustee to come into court and surrender his trust. There is no kind of trust in which the trustee may not be discharged in that way if he proceeds projserly. So this defendant jDresented himself before the Orphans’ Court and produced the note and some other assets. He said, “I hold this note for these children —two-thirds of it — and the other one-third belongs to the widow. I have settled my account although it is not due, I have not the money in habd and cannot divide and distribute it, but two-thirds of this note belong to me as guardian, and I want to be discharged from this trust.” And *9 the court made au order discharging him from his trust as guardian on his turning over to the custody of the court all the assets in his hands. He then went his way. He had discharged his trust as executor and was relieved of his trust as guardian, and the court had all the property of the estate in its hands. These children were yet minors ; it was probably the duty of the court to assign another guardian for them; but it was not done — probably they were not there, and the guardian could not be appointed in their absence. The court in the meantime took the custody of the property.
But some time after this guardian had been discharged and had left the country, the justice who was at that time holding the Orphans’ Court, directed the register of wills, who had the actual custody of this property in his hands, to turn over this note to the widow. This was done, and she subsequently disposed of it and failed to account to the children for their share of it.
Now, these children have brought an action of devastavit against Mr. May, in his capacity as executor, for the loss of this two-thirds of that note ; a loss which would never have occurred if the, court had kept the custody of the note. The court had it in its power to- appoint a receiver to collect it, if it had seen proper. But instead of doing that, it directed, by some irregular order, the register to turn this note over to the widow, and there the injury 'was done. There was no injury done by the discharge of Mr. May from his trust as guardian, nor by taking the custody of the property into the hands of the court. The injury which was done followed from the act of the court in directing the register to turn this note over to the widow. Undoubtedly that was an irregularity, but it was an irregularity on the part of the court; and it ought not to affect the defendants in this case.
The defendant acted in good faith, and not only in good faith, but he acted according to law; and as the loss did not follow from any misconduct or negligence of his, but rather in consequence of an irregular order of a justice *10 of this court, holding at that time the Orphans’ Court, he ought not to be held liable. We think it is perfectly clear that it was not in consequence of any conduct of this defendant that this note was lost to these children.
The judgment is therefore affirmed.